806 So.2d 452 (2002)
WOODSIDE VILLAGE CONDOMINIUM ASSOCIATION, INC., Petitioner,
v.
Adolph S. JAHREN and Gary M. McClernan, Respondents.
No. SC00-1030.
Supreme Court of Florida.
January 3, 2002.
*453 Samuel R. Mandelbaum and James R. De Furio of Becker & Poliakoff, P.A., Tampa, FL, for Petitioner.
Robert G. Walker, Jr., Clearwater, FL, for Respondents.
ANSTEAD, J.
We have for review Woodside Village Condominium Ass'n, Inc. v. Jahren, 754 So.2d 831 (Fla. 2d DCA 2000), which expressly and directly conflicts with White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla.1979), Flagler Federal Savings & Loan Ass'n v. Crestview Towers Condominium Ass'n, Inc., 595 So.2d 198 (Fla. 3d DCA 1992), and Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set forth below, we quash the district court's decision invalidating certain restrictions on leasing set out in the petitioner's Declaration of Condominium.

FACTS
At issue is the validity of amendments to the Declaration of Condominium adopted by the condominium owners which restrict the leasing of units in Woodside Village. Woodside Village is a condominium development located in Clearwater, Florida, consisting of 288 units. It was established in 1979 pursuant to Florida's "Condominium Act," chapter 718, Florida Statutes (1977). Petitioner, Woodside Village Condominium Association, Inc. ("Association"), is the condominium association that was formed pursuant to the Declaration of Condominium of Woodside Village ("Declaration"), recorded in the public records of Pinellas County. Respondents, Adolph S. Jahren and Gary M. McClernan, each own residential condominium units in Woodside Village.[1]
The original Declaration of Condominium for Woodside Village included a provision regarding leasing:
10.3 Leasing. The apartment may be leased or rented without prior approval, for any period of one (1) year or less, and may be leased by successive leases for periods in excess of one (1) year without the approval of the Board of Directors of the Association. In the event apartment owner leases to a lessee for a period of one (1) year or less and the apartment owner and lessee desire to extend that lease for a term of one (1) year or less, said extension shall not require the approval of the Association. However, if the Association finds during the term of any such lease that the lessee has violated the rules and regulations of the Association or the terms and provisions of the Declaration of Condominium of Woodside Village or other documents governing Woodside Village, a Condominium, or that the lessee *454 has otherwise been the cause of a nuisance or annoyance to the residents of Woodside Village, then the Association may so notify lessor of its disapproval of such lessee in writing and lessor shall be precluded from extending any lease to said lessee without the written approval of the Association.
Further, section 11.1(b) stated: "Lease. No apartment owner may dispose of an apartment or any interest therein for a term in excess of one (1) year without approval of the Board of Directors of the Association." Thus, while leasing was permitted under the original Declaration, initial leases in excess of one year were subject to board approval. In addition, section 10.3 was amended in 1995 to require that all leases and renewals receive prior approval from the Board of Directors.
In 1997 some owners became concerned that units were increasingly becoming nonowner occupied, and that such a condition would have a negative impact on the quality of life in Woodside Village and on the market value of units. Accordingly, section 10.3 was amended in March of 1997 to limit the leasing of units to a term of no more than nine months in any twelve-month period. A provision was also added prohibiting owners from leasing their units during the first twelve months of ownership. These amendments were adopted by a vote of at least two-thirds of the unit owners as required by the Declaration. As amended, section 10.3 provides:
10.3 Leasing. All leases, subleases or assignments of leases and all renewals of such agreements shall be first submitted to the Board of Directors for approval or disapproval. No record owner or owners of units in this condominium shall rent or lease more than three of their units at any one time. No lease of an owner or owners who have three units rented or leased shall be approved by the Association. No unit may be rented for more than a total of nine (9) months in any twelve (12) month period. However, if the Association finds during the term of any such lease that the lessee has violated the rules and regulations of the Association or the terms and provisions of the Declaration of Condominium of Woodside Village or other documents governing Woodside Village, a Condominium, or that the lessee has otherwise been the cause of a nuisance or annoyance to the residents of Woodside Village, then the Association may so notify lessor of its disapproval of such lessee in writing and lessor shall be precluded from extending any lease to said lessee without the written approval of the Association.
No owner shall enter into a lease, rental agreement, or other similar conveyance of use of a unit during the first twelve (12) months of ownership of that unit.
(Emphasis added.) The following year the Association notified respondents in writing that two of their respective units were not in compliance with the nine-month lease restriction set out in section 10.3 as amended.
When the respondents failed to come into compliance with the leasing restrictions, the Association filed complaints in circuit court seeking injunctions to enforce compliance with the provisions of the Declaration. Respondents filed essentially identical answers admitting notice of their failure to comply with section 10.3, but denying that compliance could be mandated under Florida law. In addition, respondents filed counterclaims for declaratory and injunctive relief asserting that the lease restriction was unreasonable, arbitrary, and capricious, and had no purpose other than to effectively ban all leasing of units. Respondents also asserted *455 the lease restriction was confiscatory and deprived them of lawful uses which were permissible at the time of purchase. Accordingly, respondents sought an injunction prohibiting the Association from enforcing the lease restriction or, alternatively, requiring the Association to compensate respondents for the fair market value of their units.
Thereafter, the Association and respondents filed separate motions for summary judgment.[2] Following a hearing on the parties' motions, the circuit court granted summary judgment in respondents' favor. Although the circuit court acknowledged that the Association has the authority to pass an amendment restricting the leasing of units, it concluded that the lease restriction at issue impermissibly "creates more than one class of ownership because it cannot be applied retroactively against unit owners who purchased their unit prior to the date of the amendment." The court ruled that the Association would be required to purchase respondents' units if it decided to enforce the nine-month lease restriction retroactively.
On appeal, the Second District affirmed the trial court's final summary judgment and held that the lease restriction could not be enforced because it was adopted after the respondents acquired their units and no significant lease restrictions existed when respondents purchased their units. See Woodside Village Condominium Ass'n, Inc. v. Jahren, 754 So.2d 831, 833 (Fla. 2d DCA 2000). The court acknowledged that the lease restrictions would be valid if they predated the respondents' purchase of units. See id. at 832-33. In its analysis, the court rejected the reasoning of Flagler Federal Savings & Loan Ass'n v. Crestview Towers Condominium Ass'n, 595 So.2d 198 (Fla. 3d DCA 1992), and distinguished Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976), wherein the Third and Fourth Districts upheld the validity of amendments to condominium declarations imposing additional lease restrictions on existing unit owners. See id. at 833-35.[3] The district court also cited an accommodation for leasing that Woodside Village made in a discrimination lawsuit on behalf of the handicapped as additional support for its holding. See id. at 835-36.

ANALYSIS
Condominiums and the forms of ownership interests therein are strictly creatures of statute. See §§ 718.101-718.622, Fla. Stat. (2000); see also Winkelman v. Toll, 661 So.2d 102, 105 (Fla. 4th DCA 1995); Suntide Condominium Ass'n v. Division of Florida Land Sales & Condominiums, 463 So.2d 314, 317 (Fla. 1st DCA 1984). In Florida, Chapter 718, Florida Statutes, known as Florida's "Condominium Act," gives statutory recognition to the condominium form of ownership of real property and establishes a detailed scheme for the creation, sale, and operation of condominiums. Pursuant to section 718.104(2), a condominium is created by recording a declaration of condominium in the public records of the county where the land is located. See § 718.104(2), Fla. Stat. (2000).
*456 The declaration, which some courts have referred to as the condominium's "constitution,"[4] strictly governs the relationships among the condominium unit owners and the condominium association. As explained by the court in Pepe v. Whispering Sands Condominium Ass'n, Inc., 351 So.2d 755 (Fla. 2d DCA 1977):
A declaration of a condominium is more than a mere contract spelling out mutual rights and obligations of the parties theretoit assumes some of the attributes of a covenant running with the land, circumscribing the extent and limits of the enjoyment and use of real property. Stated otherwise, it spells out the true extent of the purchased, and thus granted, use interest therein. Absent consent, or an amendment of the declaration of condominium as may be provided for in such declaration, or as may be provided by statute in the absence of such a provision, this enjoyment and use cannot be impaired or diminished.
Id. at 757-58 (footnotes omitted). Hence, because condominiums are a creature of statute courts must look to the statutory scheme as well as the condominium declaration and other documents to determine the legal rights of owners and the association. See §§ 718.101-718.622, Fla. Stat. (2000); see also Shorewood West Condominium Ass'n v. Sadri, 140 Wash.2d 47, 992 P.2d 1008, 1012 (2000) (noting that the property rights condominium unit owners have in their units are creations of condominium statute and are subject to the statute, the declaration, the association's bylaws, and amendments to the declaration and bylaws).
From the outset, courts have recognized that condominium living is unique and involves a greater degree of restrictions upon the rights of the individual unit owners when compared to other property owners. See Seagate Condominium Ass'n, 330 So.2d at 486 (citing cases). For instance, in White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla.1979), we recognized that "[r]easonable restrictions concerning use, occupancy and transfer of condominium units are necessary for the operation and protection of the owners in the condominium concept." Id. at 350. In White Egret, we quoted favorably from Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180 (Fla. 4th DCA 1975), to further explain the restrictive nature of condominium ownership and living:
[I]nherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization.
White Egret, 379 So.2d at 350. Consistent with this analysis of condominium ownership, courts have acknowledged that "increased controls and limitations upon the rights of unit owners to transfer their property are necessary concomitants of condominium living." Aquarian Foundation, Inc. v. Sholom House, Inc., 448 So.2d 1166, 1167 (Fla. 3d DCA 1984). Indeed, section 718.104(5), Florida Statutes (2000), expressly recognizes that a declaration of condominium may contain restrictions concerning the use, occupancy, and transfer of units. See § 718.104(5), Fla. Stat. (2000).
*457 Courts have also consistently recognized that restrictions contained within a declaration of condominium should be clothed with a very strong presumption of validity when challenged. The logic behind this presumption was explained in Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637 (Fla. 4th DCA 1981), wherein the court reasoned:
There are essentially two categories of cases in which a condominium association attempts to enforce rules of restrictive uses. The first category is that dealing with the validity of restrictions found in the declaration of condominium itself. The second category of cases involves the validity of rules promulgated by the association's board of directors or the refusal of the board of directors to allow a particular use when the board is invested with the power to grant or deny a particular use.
In the first category, the restrictions are clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed. Such restrictions are very much in the nature of covenants running with the land and they will not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right. See White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla.1979).
Id. at 639-40 (emphasis added).

AMENDMENTS TO DECLARATION
Significantly, section 718.110 also provides broad authority for amending a declaration of condominium. In particular, section 718.110(1)(a) provides:
If the declaration fails to provide a method of amendment, the declaration may be amended as to all matters except those listed in subsection (4) or subsection (8) if the amendment is approved by the owners of not less than two-thirds of the units. Except as to those matters described in subsection (4) or subsection (8), no declaration recorded after April 1, 1992, shall require that amendments be approved by more than four-fifths of the voting interests.
§ 718.110(1)(a), Fla. Stat. (2000) (emphasis added). Based upon this broad statutory authority and the provisions for amendment set out in the declaration of condominium, courts have recognized the authority of condominium unit owners to amend the declaration on a wide variety of issues, including restrictions on leasing. Of course, section 718.110(1)(a) itself contains some restrictions on the amendment process. For example, pursuant to subsections (4) and (8), all unit owners must consent to amendments which materially alter or modify the size, configuration or appurtenances to the unit, change the percentage by which the unit owner shares the common expenses and owns the common surplus of the condominium, or permit timeshare estates to be created in any unit of the condominium, unless otherwise provided in the declaration as originally recorded. See § 718.110(4), (8), Fla. Stat. (2000). These provisions are not at issue here.

SEAGATE
In Seagate Condominium Ass'n, Inc. v. Duffy, 330 So.2d 484 (Fla. 4th DCA 1976), the court upheld an amendment to the declaration of condominium prohibiting leasing of any units, except for limited periods in cases of hardship. The amendment provided:
As previously stated, it is the intent that the owner of each unit of Seagate Towers Condominium shall occupy and use *458 such unit as a private dwelling for himself and his immediate family, and for no other purpose including business purposes. Therefore, the leasing of units to others as a regular practice for business, speculative, investment or other similar purposes is not permitted.
To meet special situations and to avoid undue hardship or practical difficulties the Board of Directors may grant permission to an owner to lease his unit to a specified lessee for a period not less than four consecutive months nor more than twelve consecutive months.
Id. at 484-85. The trial court held that the amendment was both an unreasonable restriction and an unlawful restraint on alienation and awarded damages for lost rents to the unit owners who challenged the amendment. See id. at 485. On appeal, the Fourth District reversed, and explained:
It is our opinion that appellant's leasing restriction constitutes neither an unlimited nor unreasonable restraint on alienation. The restriction is not unlimited in several respects: it prohibits only a specific form of alienation, i.e., leasing; under general but not unlimited circumstances, i.e., the condominium association will consider its suspension in hardship for a not unlimited period of time, i.e., because it can be terminated at any time by a vote of the condominium unit owners pursuant to the amendment provisions of their Declaration of Condominium. The restriction, moreover, is reasonable. Given the unique problems of condominium living in general and the special problems endemic to a tourist oriented community in South Florida in particular, appellant's avowed objective to inhibit transiency and to impart a certain degree of continuity of residence and a residential character to their communityis, we believe, a reasonable one, achieved in a not unreasonable manner by means of the restrictive provision in question. The attainment of this community goal outweighs the social value of retaining for the individual unit owner the absolutely unqualified right to dispose of his property in any way and for such duration or purpose as he alone so desires.
Id. at 486-87 (footnote omitted). The district court upheld the amendment even as it was applied to unit owners who acquired their units prior to the amendments.

FLAGLER FEDERAL
In Flagler Federal Savings & Loan Ass'n v. Crestview Towers Condominium Ass'n, 595 So.2d 198 (Fla. 3d DCA 1992), the court also addressed a declaration amendment prohibiting leasing as applied to an owner who acquired title to a unit prior to the amendment. The original declaration provided that unit owners could not lease their units without the express approval of the association, but excluded from the leasing restriction institutional mortgagees acquiring title. While this provision was in effect, Flagler Federal became the mortgagee on units 216 and 503. Subsequently, the declaration was amended to prohibit leasing entirely and eliminated the previous exclusion for institutional mortgagees acquiring title. In 1987, Flagler Federal acquired title to unit 503 by purchasing the unit at a foreclosure sale and acquired title to unit 216 when the mortgagors gave it a quitclaim deed in lieu of foreclosure. Thereafter, when the association objected to Flagler Federal's attempt to lease the units, the bank filed suit seeking declaratory and injunctive relief. The trial court denied the bank's claim and granted the association a final summary judgment upholding the lease restriction as amended.
On appeal, the Third District affirmed, holding that both units were bound by the *459 amendment to the declaration. First, the court rejected Flagler Federal's argument that title to unit 216, acquired by quitclaim deed in lieu of foreclosure, related back to the date of the mortgage. See id. at 220. Thus, the court found that the operative date for determining the applicability of the declaration amendment to unit 216 was the date of the quitclaim deed. See id. The court noted that when Flagler Federal acquired title by quitclaim deed the amended declaration was in effect. Further, the court stated Flagler Federal had notice of the recorded declaration and its amendment provisions when it mortgaged the unit and acquired the unit. Accordingly, the court concluded that Flagler Federal could not complain that the declaration amendment was binding on unit 216. See id.
Although Flagler Federal's title to unit 503 related back to the date of its mortgage, the court held it was nonetheless bound by the subsequent declaration amendment prohibiting leasing. See id. at 200. In so doing, the court recognized that restrictions found in a declaration "are clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed." Id. (quoting Hidden Harbour Estates, Inc. v. Basso, 393 So.2d 637, 639 (Fla. 4th DCA 1981)). As to the effect of the subsequent amendment, the court reasoned that since Flagler Federal was on notice of the recorded declaration's provisions for amendments to the declaration when it issued the mortgage, it, like other unit owners who acquired title prior to the amendment, was bound by the subsequent amendments to the declaration. See id.

OTHER JURISDICTIONS
We note that the majority of courts in other jurisdictions have held that a duly adopted amendment restricting either occupancy or leasing is binding upon unit owners who purchased their units before the amendment was effective. See Ritchey v. Villa Nueva Condominium Ass'n, 81 Cal.App.3d 688, 146 Cal.Rptr. 695, 700 (1978); Hill v. Fontaine Condominium Ass'n, Inc., 255 Ga. 24, 334 S.E.2d 690, 691 (1985); Apple II Condominium Ass'n v. Worth Bank & Trust Co., 277 Ill.App.3d 345, 213 Ill.Dec. 463, 659 N.E.2d 93 (1995); Breezy Point Holiday Harbor Lodge-Beachside Apartment Owners' Ass'n v. B.P. P'ship, 531 N.W.2d 917, 920 (Minn.Ct. App.1995) (in dicta); McElveen-Hunter v. Fountain Manor Ass'n, Inc., 96 N.C.App. 627, 386 S.E.2d 435, 436 (1989), aff'd, 328 N.C. 84, 399 S.E.2d 112 (1991); Shorewood West Condominium Ass'n v. Sadri, 140 Wash.2d 47, 992 P.2d 1008, 1012 (2000); cf. Burgess v. Pelkey, 738 A.2d 783, 788 (D.C. 1999); but see 560 Ocean Club, L.P. v. Ocean Club Condominium Ass'n (In re 560 Ocean Club, L.P.), 133 B.R. 310, 320 (Bankr.D.N.J.1991); Breene v. Plaza Tower Ass'n, 310 N.W.2d 730, 734 (N.D.1981).
An appellate opinion from Illinois is illustrative of these decisions. In Apple II Condominium Ass'n v. Worth Bank & Trust Co., the Illinois appellate court applied the Fourth District's analysis in Basso in upholding the validity of a declaration amendment which restricted leasing of units to no more than once during ownership, with no lease exceeding twelve months. In enforcing the amendment, the court declared:
The Condominium Property Act specifically states that amendments to the Declaration "shall be deemed effective upon recordation unless the amendment sets forth a different effective date." (765 ILCS 605/17 (West 1994).) In our view, neither the fact that there were no restrictions on the property when the Harmons purchased their unit nor the *460 fact that the Harmons purchased the property for investment purposes is relevant to the proper resolution of the issues presented in this case. As purchasers of the condominium property, the Harmons are charged with knowledge of the Condominium Property Act and that the Declaration governing their unit was subject to amendment. Section 18.4(h) of the Act specifically recognizes that the Board may implement rules governing the "use of the property," so long as the restrictions do not impair those rights guaranteed by the First Amendment to the United States Constitution or the Free Speech provisions of the Illinois Constitution. (See 765 ILCS 605/18.4(h) (West 1994).) In the absence of a provision either in the Amendment or in the original Declaration, condominium owners do not have vested rights in the status quo ante. See Crest Builders, Inc. v. Willow Falls Improvement Association (1979), 74 Ill. App.3d 420, 30 Ill.Dec. 452, 393 N.E.2d 107 (party challenging amendment has no vested interest in the Declaration as originally written); McElveen-Hunter v. Fountain Manor Association, Inc. (1989), 96 N.C.App. 627, 386 S.E.2d 435 (noting that most courts have adopted the "sounder view" that changes to a condominium declaration are binding upon both previous and subsequent owners).
Apple II Condominium Ass'n, 213 Ill.Dec. 463, 659 N.E.2d at 97. The court further reasoned that the approval of the amendment by the association's membership made the leasing restriction a "category one" restriction under Basso, thereby elevating the level of deference given by the court. See id. at 98. Accordingly, the court concluded that when an amendment has been passed by an association's membership it would presume the restriction was valid and uphold it unless it was shown that the restriction was arbitrary, against public policy, or in violation of some fundamental constitutional right. See id. at 98-99.
We agree with this reasoning. To hold otherwise, we would have to conclude that the right to amend a declaration of condominium is substantially limited, well beyond those limitations imposed by the Legislature in section 718.110(4) and (8). We would also be faced with the difficult task of deciding what subjects could be addressed by the amendment process, a task much better suited for the Legislature, as can be seen by its imposition of restrictions in section 718.110.

THIS CASE
Respondents in this case purchased their units subject to the Declaration which expressly provides that it can be amended and sets forth the procedure for doing so. See Providence Square Ass'n v. Biancardi, 507 So.2d 1366, 1372 (Fla.1987) (noting that condominium purchasers are charged with notice of the recorded documents). Section 14 of the Declaration generally provides that an amendment may be adopted by a supermajority of two-thirds of the owners.[5] Further, section 13 expressly states that each owner shall be governed by the Declaration as amended from time to time:

*461 13. Compliance and Default. Each apartment owner shall be governed by and shall comply with the terms of this Declaration, the By-Laws and the Rules and Regulations adopted pursuant thereto, and Management Agreement, and said documents as they may be amended from time to time. Failure of the apartment owner to comply therewith shall entitle the Association or other apartment owners to the following relief in addition to other remedies provided in this Declaration and the Condominium Act....
(Emphasis added.) In addition, the legal description for each of respondents' units that were allegedly being used in violation of the lease restriction provides that the units are subject to the restrictions contained in the Declaration and subsequent amendments thereto.[6]
Thus, we find that respondents were on notice that the unique form of ownership they acquired when they purchased their units in the Woodside Village Condominium was subject to change through the amendment process, and that they would be bound by properly adopted amendments. See Kroop v. Caravelle Condominium, Inc., 323 So.2d 307, 309 (Fla. 3d DCA 1975) (upholding restriction limiting leasing to once during ownership where condominium owner acquired unit with knowledge that the declaration might thereafter be lawfully amended); see also Ritchey v. Villa Nueva Condominium Ass'n, 81 Cal.App.3d 688, 146 Cal.Rptr. 695, 700 (1978) (noting that declaration provided bylaws could be amended and that purchaser would be subject to any reasonable amendment properly adopted); McElveen-Hunter v. Fountain Manor Ass'n, Inc., 96 N.C.App. 627, 386 S.E.2d 435, 436 (1989), aff'd, 328 N.C. 84, 399 S.E.2d 112 (1991) (noting that plaintiff acquired her units subject to the right of other owners to restrict their occupancy through properly enacted amendments to the declaration); Worthinglen Condominium Unit Owners' Ass'n v. Brown, 57 Ohio App.3d 73, 566 N.E.2d 1275, 1277 (1989) (stating that purchasers of condominium units should realize that the regime in existence at the time of purchase may not continue indefinitely and that changes in the declaration may take the form of restrictions on the unit owners' use of their property); cf. Burgess v. Pelkey, 738 A.2d 783, 789 (D.C.1999) (stating unit owner was on notice at time of purchase of the possibility that his rights in the cooperative could be affected by subsequent changes in the cooperative's bylaws and house rules).
It is also uncontradicted that the Association acted within the framework of the Declaration in adopting the amendment at issue. As noted above, the Declaration for Woodside Village specifically provides for amendment and sets forth the procedure for doing so. Further, pursuant to the Declaration, the amendment imposing the nine-month lease restriction was approved *462 by at least two-thirds of the condominium unit owners. Hence, we conclude that the lease restriction amendment was properly enacted under the amendment provisions of the Declaration, and that the respondents took title to their units subject to the amendment provision set out in the Declaration and authorized by statute.
We also conclude that the respondents have failed to demonstrate that the restriction, in and of itself, violates public policy or respondents' constitutional rights, at least as asserted herein. See Apple II Condominium Ass'n, 213 Ill.Dec. 463, 659 N.E.2d at 98-99. The respondents have simply failed to point out any provision in the statutory scheme for condominiums or any provision in the state or federal constitutions that would bar such lease restrictions. It is apparent from the circumstances giving rise to its adoption that the amendment was intended to promote owner occupancy of the condominium units, a goal certainly consistent with the concept of condominium living as originally contemplated by the legislation authorizing the condominium form of land ownership. Although a different restriction could have been adopted to better promote owner occupancy within the condominium, we cannot conclude that the amendment restricting leases to nine months in any twelve-month period is arbitrary in its attempt to achieve this goal. As discussed above, most such restrictions simply come with the unique territory of condominium ownership. Indeed, it is restrictions such as these that distinguish condominium living from rental apartments or single-family residences. Hence, persons acquiring units in condominiums are on constructive notice of the extensive restrictions that go with this unique, and some would say, restrictive, form of residential property ownership and living. Accordingly, we conclude the amendment is valid and enforceable against respondents.

ABILITIES AMENDMENT
Petitioner maintains that the district court also erred in concluding that a subsequent amendment to the Declaration known as the "Abilities Amendment," when viewed together with the nine-month lease restriction, impermissibly created two classes of condominium unit ownership.[7] As reflected in the decision below, Abilities of Florida, Inc. ("Abilities") is a non-profit corporation that obtains financing through the U.S. Department of Housing and Urban Development ("HUD") to purchase condominium units that it then leases to handicapped persons. HUD refused to finance Abilities' purchase of units at Woodside Village because of the nine-month lease restriction. As a result, Abilities filed a federal lawsuit alleging that Woodside Village had violated fair housing laws by failing to provide a reasonable accommodation to tenants based on their disabilities. The federal court entered a temporary injunction against the Association barring the enforcement of the lease restriction against Abilities. Subsequently, the parties settled the lawsuit. One condition of the settlement was that the Association adopt the so-called "Abilities Amendment," which would permit Abilities to purchase six units at the condominium that would be exempt from the nine-month lease restriction. The amendment was properly adopted by the Association's members in November of 1997.
On appeal, the district court agreed with the trial court that the Abilities Amendment impermissibly created two classes of condominium ownership, although the court cited no authority to support its conclusion. See Woodside Village Condominium *463 Ass'n, 754 So.2d at 836. In so doing, the court rejected petitioner's claims that the issue was not properly before the trial court and that the amendment should not be considered in an equal protection argument regarding an arbitrary creation and treatment of two classes of unit owners since the "class" created by the amendment resulted from the settlement of a contested claim involving alleged civil rights violations. See id.
As a preliminary matter, it should be noted that some courts and commentators have expressed considerable doubt as to whether the actions of a community association, such as a condominium association, constitute state action necessary for constitutional claims. See, e.g., Laguna Royale Owners Ass'n v. Darger, 119 Cal.App.3d 670, 174 Cal.Rptr. 136, 144 (1981) ("[T]here is considerable doubt of whether the actions of Association constitute state action so as to bring into play the constitutional guarantees."); Lewis A. Schiller, Limitations on the Enforceability of Condominium Rules, 22 Stetson L.Rev. 1133, 1167 (1993) (noting that state action appears to be lacking in condominium rules, although author expressed view that constitutional standards should apply to condominium rules). On the other hand, some courts have either assumed state action exists or have chosen not to address the issue. For example, in White Egret, this Court analyzed a due process and equal protection challenge to an age restriction contained in a declaration without specifically discussing the issue of state action. See White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla.1979); see also Franklin v. Spadafora, 388 Mass. 764, 447 N.E.2d 1244, 1249-51 (1983) (assuming state action for purposes of analyzing claim that an amendment limiting to two the number of units which could be owned by any individual or entity deprived plaintiffs of their due process and equal protection rights). We resolve the issue here by concluding that no colorable claim of discrimination has been demonstrated.
We recognize that amendments which grant different benefits or impose different restrictions on truly similarly situated unit owners may be subject to challenge. For instance, in Pearlman v. Lake Dora Villas Management, Inc., 479 So.2d 780 (Fla. 5th DCA 1985), the court invalidated a declaration provision prohibiting all children under sixteen from permanent residence, except children of transferees from an institutional first mortgage. In so doing, the court agreed with the appellants' argument that the provision violated equal protection by its arbitrary creation and treatment of two classes of grantees. See id. at 780. The court reasoned as follows:
The Association does not argue that children under the age of sixteen whose parents own a unit as transferees from an institutional first mortgage are less intrusive that those children whose parents obtained title from another source. It speculates such a group may be smaller and the exception is required for financing purposes. However true that may be as a practical matter, the distinction between the two classes of children still remains arbitrary and discriminatory.
Id. at 781. However, unlike the situation in Pearlman, the distinction between Abilities and other unit owners, such as the respondents, is not arbitrary and discriminatory. Rather, it is directly related to providing reasonable accommodations to enable handicapped persons an equal opportunity to use and enjoy a unit in the complex through the assistance of Abilities.
As noted by petitioner, both federal law and section 760.23, Florida Statutes (2000), generally prohibit discrimination in the *464 sale or rental of a dwelling based on, among other things, a person's handicap. For purposes of section 760.23(7) and (8),[8] pertaining to discrimination because of a handicap, discrimination includes "[a] refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." § 760.23(9)(b), Fla. Stat. (2000). Thus, contrary to the holdings below, we conclude the Abilities Amendment does not constitute an arbitrary and discriminatory creation of two classes of unit owners in its attempt to accommodate the disabled. Cf. Lakeside Manor Condominium Ass'n, Inc. v. Forehand, 513 So.2d 1104, 1106 (Fla. 5th DCA 1987) (rejecting argument that right of first refusal in condominium declaration pertaining to sales and leases was invalid merely because the developer and first mortgage holders were exempt from its operation).

LEGISLATIVE OVERSIGHT
We recognize the concerns that owners, such as respondents, who purchased their individual condominium units for investments have regarding the imposition of lease restrictions through subsequent declaration amendments without the consent of all unit owners. The question is, of course, how far can two-thirds of the condominium owners go in restricting leasing rights in the condominium units. The answer will usually be found in the legislative scheme creating and governing condominiums. Although we believe such concerns are not without merit, we are constrained to the view that they are better addressed by the Legislature. If condominium owners are to be restrained in their enactment of such lease restrictions, it is appropriate that such restraint be set out in the legislative scheme that created and regulates condominiums and condominium living. As noted above, the Legislature has demonstrated its awareness of the need for limitations on the authority of unit owners to amend a declaration by its enactment of section 718.110(1)(a), (4), and (8). However, as noted, in this instance no provision in the Condominium Act prohibits the adoption of an amendment imposing a lease restriction, nor does any provision require the consent of all unit owners to adopt such an amendment. To the contrary, the Condominium Act provides broad authority for amending a declaration of condominium. See § 718.110(1)(a), Fla. Stat. (2000).
For the reasons stated above, we quash the decision below and approve the decisions reached in Seagate and Flagler Federal to the extent consistent with this opinion.
It is so ordered.
*465 WELLS, C.J., and SHAW, HARDING, PARIENTE, and LEWIS, JJ., concur.
QUINCE, J., concurs specially with an opinion.
QUINCE, J., specially concurring.
I concur in the majority's decision which quashes the decision by the Second District Court of Appeal. I write simply to urge the Legislature to seriously consider placing some restrictions on present and/or future condominium owners' ability to alter the rights of existing condominium owners. At the time the units in question here were purchased, the owners had the right to lease their property with relatively few restrictions. One of the owners purchased his units in 1979 and had enjoyed this leasing right for eighteen years before the Declaration of Condominium was amended. The twelve-month lease which was permitted at the time these unit owners purchased their units is no longer valid. These owners can now only lease their property for nine months in any twelve month period. As the district court pointed out the amendment has deprived these owners of a valuable right that existed at the time of purchase. See Woodside Village Condominium Assoc., Inc. v. Jahren, 754 So.2d 831, 833 (Fla. 2d DCA 2000). This valuable right may well have been the determinative factor for their decisions to buy these properties. As the district court suggested, there should at least be some type of "escape" provision for those "unit owners whose substantial property rights are altered by amendments to declarations adopted after they acquire their property." 754 So.2d at 835.
NOTES
[1] According to the record, Jahren has been a unit owner in Woodside Village since 1979. He currently owns four units which were purchased prior to the Declaration amendment at issue in this case. McClernan has been a unit owner in Woodside Village since 1996 when he purchased two units. Neither Jahren nor McClernan resides in his units.
[2] Prior to the parties' motions for summary judgment, the two cases were consolidated.
[3] The petitioner conceded in the district court that the respondents could not be forced to terminate existing leases that were entered into in good faith reliance on the prevailing provisions in the Declaration at the time such leases were executed. For example, if the respondents leased a unit for twelve months, the amendment barring leases for more than nine months could not be enforced to terminate that lease.
[4] See, e.g., Schmidt v. Sherrill, 442 So.2d 963, 965 (Fla. 4th DCA 1983).
[5] Section 14.5, however, provides in part that "no amendment shall discriminate against any apartment owner nor against any apartment or class or group of apartment owners unless the apartment owners so affected ... consent; and no amendment shall change any apartment nor the share in the common elements, and other of its appurtenances nor increase the owner's share of the common expenses unless the owner of the apartment concerned ... join[s] in the execution of the amendment."
[6] For example, the legal description for unit 1203D owned by Jahren, as recited in the Association's complaint, reads as follows:

That certain condominium parcel described as Unit 1203D, Building 3, Woodside Village, a Condominium, and an undivided interest or share in the common elements appurtenant thereto, in accordance with and subject to the covenant, conditions, restrictions, easements, terms and other provisions of the Declaration of Condominium of Woodside Village, a Condominium, as recorded in Official Records Book 4816, page 1517, and amendments thereto, and the Plat thereof recorded in Condominium Plat Book 34, page 78-86, Public records of Pinellas County, Florida. A/K/A 4215 East Bay Drive, # 1203D, Clearwater, Florida 33764.
(Emphasis added.) The legal descriptions for the other three units involved in this case contain similar language.
[7] It should be noted that a copy of the "Abilities Amendment" is not in the record.
[8] Section 760.23(7)-(8) provides:

(7) It is unlawful to discriminate in the sale or rental of, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of:
(a) That buyer or renter;
(b) A person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
(c) Any person associated with the buyer or renter.
(8) It is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of:
(a) That buyer or renter;
(b) A person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or
(c) Any person associated with the buyer or renter.
§ 760.23(7)-(8), Fla. Stat. (2000). Analogous federal provisions are found in 42 U.S.C. § 3604.