# Third District Court of Appeal

## State of Florida

Opinion filed October 6, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1807
Lower Tribunal No. 14-283
_____

**First Equitable Realty III, Ltd.,**
Appellant/Cross-Appellee,

vs.

**Grandview Palace Condominium Association, Inc.,**
Appellee/Cross-Appellant.

An appeal from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Squire Patton Boggs (US) LLP, and Alvin B. Davis, for appellant/cross-appellee.

GrayRobinson, P.A., and Gary M. Carman, and Richard F. Danese, for appellee/cross-appellant.

Before FERNANDEZ, C.J., and MILLER, and BOKOR, JJ.

MILLER, J.

The developer, First Equitable Realty III, Ltd. appeals and the condominium association, Grandview Palace Condominium Association, cross-appeals from a final declaratory judgment rendered following the adjudication of competing summary judgment motions. We affirm on all grounds, save the determination the developer is responsible for the payment of utility expenses incurred in connection with the operation of laundry rooms, designated as limited common elements under the Declaration of Condominium.

## BACKGROUND

The developer owns units within the condominium and leases coin-operated appliances housed in twenty-two laundry rooms located throughout Grandview Palace. It derives a profit by charging residents on a pay-per-use basis.

For nearly a decade, the Association paid all utility expenses incurred in connection with the operation of the laundry rooms. After wresting control from the developer, however, a board of directors favorable to the unit owners adopted a Second Amendment to the Declaration purporting to absolve the Association of any responsibility for such utility expenses. The Association then placed the utility accounts in the name of the developer and installed separate meters in each of the laundry rooms.

2

As relevant to these proceedings, the Association ratified three separate condominium documents relating to the laundry utilities. We examine each, in turn. Recorded in 2003, the original Declaration of Condominium of Grandview Palace designates the laundry rooms as "Limited Common Elements." It provides, in pertinent part:

> The expense of maintenance and repair relating to these Limited Common Elements shall be considered a Common Expense, except that the Association shall not be responsible for the repair or replacement of any equipment or improvements made by the Developer . . . to this Limited Common Element area.

Under the Declaration, "Limited Common Elements" are defined as "those [c]ommon elements which are reserved for the use of a certain condominium Unit or Units to the exclusion of other Units as specified in the Declaration of Condominium."

While silent as to laundry room utility expenses, the Declaration defines "common expenses" as "all expenses and Assessments properly incurred by the Association for the Condominium." Encompassed within the definition are those "expenses of the operation, maintenance, repair or replacement of the Common Elements [and] utilities for the entire Condominium."

3

In 2007, the Declaration was amended, yielding the First Amendment to the Declaration. As pertinent to our analysis, one passage of the First Amendment reads:

> If the Developer holds Units for sale in the ordinary course of business, none of the following actions may take place without the approval in writing by the developer:
>
> . . . .
>
> (2) Any action by the Association that would be detrimental to the sale or lease of Units by the Developer, in its sole opinion.

In early 2013, the board proposed yet another amendment, but avail, the developer refused to agree to the proposal. The Second Amendment was adopted and recorded, and it provides:

> (9) Laundry Rooms: . . . The expense of maintenance and repair relating to these Limited Common Elements shall be considered a Common Expense, except that the Association shall not be responsible for <u>utility charges (gas, electricity)</u>, the repair or replacement of any improvements made by the Developer.

The Association then filed suit below against the developer, seeking a judicial declaration as to the rights of the parties. The developer answered and counterclaimed, and after engaging in discovery, the parties filed dueling summary judgment motions. The developer contended the Second Amendment was ultra vires, and, under the remaining condominium documents, the obligation to pay laundry utility expenses rested squarely upon the Association. The Association asserted the Second Amendment

4

was valid, and, regardless, the original Declaration required payment of the utility expenses by the developer.  The trial court granted summary judgment in favor of the Association, and the instant appeal and cross-appeal ensued.

## STANDARD OF REVIEW

"[A] declaratory judgment is accorded a presumption of correctness." Three Keys, Ltd. v. Kennedy Funding, Inc., 28 So. 3d 894, 903 (Fla. 5th DCA 2009).  Here, however, because "the trial court's interpretation and application of" the Declaration and other condominium documents "present pure questions of law, our standard of review is de novo."  IconBrickell Condo. No. Three Ass'n, Inc. v. New Media Consulting, LLC, 310 So. 3d 477, 479 (Fla. 3d DCA 2020).  Further, "[s]ummary judgment is proper only when there is no genuine issue of material fact" as to any of the elements that would entitle a party to declaratory relief.[1]  Harris v. Aberdeen Prop. Owners

---

[1] See Harris, 135 So. 3d at 368 (quoting Coal. for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles, 680 So. 2d 400, 404 (Fla. 1996)) ("In order to be entitled to declaratory relief, a party must show: 'There is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity.'").

<u>Ass'n, Inc.</u>, 135 So. 3d 365, 367 (Fla. 4th DCA 2014) (quoting <u>Fredrick v. N. Palm Beach Cnty. Improvement Dist.</u>, 971 So. 2d 974, 978 (Fla. 4th DCA 2008)).

**LEGAL ANALYSIS**

Under Florida law, "[t]he powers and duties of the association include those set forth in [section 718.111, Florida Statutes,] and, except as expressly limited or restricted in [the Condominium Act], those set forth in the declaration and bylaws and part I of [the Florida Business Corporation Act] and [Florida Not For Profit Corporation Act], as applicable." § 718.111(2), Fla. Stat (2021). "The declaration, which some courts have referred to as the condominium's 'constitution,' strictly governs the relationships among the condominium unit owners and the condominium association." <u>Woodside Vill. Condo. Ass'n, Inc. v. Jahren</u>, 806 So. 2d 452, 456 (Fla. 2002) (footnote omitted). Thus, the declaration "possesses 'attributes of a covenant running with the land' and operates as a contract among unit owners and the association," and where the language "is clear and unambiguous, courts must give effect to the [declaration] as written." <u>Cohn v. Grand Condo. Ass'n, Inc.</u>, 62 So. 3d 1120, 1121 (Fla. 2011) (quoting <u>Woodside</u>, 806 So. 2d at 456)); <u>Talbott v. First Bank Fla., FSB</u>, 59 So. 3d 243, 245 (Fla. 4th DCA 2011). In this regard, it is imperative the declaration is "interpreted in a

6

manner that does not render any provision of the contract meaningless." Silver Shells Corp. v. St. Maarten at Silver Shells Condo. Ass'n, Inc., 169 So. 3d 197, 203 (Fla. 1st DCA 2015).

In the instant case, the original Declaration designates the laundry rooms as limited common elements. Expenses relating to the maintenance and repair of the laundry rooms, other than "the repair or replacement of any equipment or improvements made by the Developer," are denominated common expenses. In this vein, the operation and maintenance of the common elements and "utilities for the entire Condominium" are common expenses, payable by the Association. As it is axiomatic that "all limited common elements are common elements," even though "not all common elements are limited," the plain language of these provisions supports the conclusion the parties intended the Association to absorb the utility expenses arising out of the use of the laundry rooms. Gary A. Poliakoff, Law of Condominium Operations § 4:65 (2021).

This reading is consistent with several provisions of the Condominium Act, as codified in chapter 718, Florida Statutes. The Act provides, in relevant part, "[m]aintenance of the common elements is the responsibility of the association," but "[t]he declaration may provide that certain limited common elements shall be maintained by those entitled to use the limited

7

common elements or that the association shall provide the maintenance, either as a common expense or with the cost shared only by those entitled to use the limited common elements." § 718.113(1), Fla. Stat. Here, other than requiring the developer to pay repair and replacements costs for equipment and improvements, the Declaration does not purport to shift the statutory expense allocation. Had the parties wished to further depart from the statute, they could have done so with clear language to that effect.

Thus, we turn our analysis to the amendments. Here, there is no challenge to the First Amendment. Under the unambiguous language, the developer is endowed with the right to reject any further amendments it deems, in its sole discretion, harmful to the future sale of its units, and, here, the developer opposed the Second Amendment. The Association argues, however, the Second Amendment is valid because the shifting of utility expenses is beneficial rather than detrimental, to units held for sale or lease because future owners will pay less in assessments. Although we do not discount the sound logic advanced by the Association, this argument misses the mark. The First Amendment gives the developer the unilateral right to determine harm in its "sole opinion." The reasonableness of that opinion is not a salient consideration under the plain language. Thus, given the opposition by the developer, the Second Amendment cannot stand.

In closing, we are not unmindful that the laundry facilities do not necessarily bear all of the hallmarks of conventional limited common elements.[2] Nonetheless, "restrictions contained within a declaration of condominium should be clothed with a very strong presumption of validity when challenged," and in this case, the parties agreed to designate the laundry rooms as limited common elements. Woodside, 806 So. 2d at 457. "Courts may not 'rewrite contracts or interfere with freedom of contracts or substitute [their] judgment for that of the parties to the contract in order to relieve one of the parties from apparent hardships of an improvident bargain.'" Fla. Dept' of Fin. Servs. v. Freeman, 921 So. 2d 598, 607 (Fla. 2006) (Cantero, J., concurring) (quoting Quinerly v. Dundee Corp., 31 So. 2d 533, 534 (Fla. 1947)). Hence, we decline to rewrite the parties' contracts, and we conclude the lower court erred in saddling the developer with laundry-related utility expenses. See Pepe v. Whispering Sands Condo. Ass'n, Inc., 351 So. 2d 755, 757–58 (Fla. 2d DCA 1977) ("Absent consent, or an amendment of the declaration of condominium as may be provided for

---

[2] As the laundry rooms are under the exclusive control of the developer, with access permitted in exchange for compensation, their use is not inconsistent with either the Declaration or the Act. See § 718.103(19), Fla. Stat. ("'Limited common elements' means those common elements which are reserved for the use of a certain unit or units to the exclusion of all other units, as specified in the declaration.").

9

in [a] declaration, or as may be provided by statute in the absence of such a provision, [the] enjoyment and use [of real property] cannot be impaired or diminished."). Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent herewith.

Affirmed in part; reversed in part; remanded.