# Third District Court of Appeal
## State of Florida

Opinion filed October 19, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1314
Lower Tribunal No. 20-8089
_____

**Bal Harbour Tower Condominium Association, Inc.,**
Appellant,

vs.

**Martin Bellorin,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Cole, Scott & Kissane, P.A., and Therese A. Savona (Orlando), for appellant.

Tenenbaum Law Group, PLLC and Jason Tenenbaum, for appellee.

Before SCALES, HENDON and LOBREE, JJ.

LOBREE, J.

In this premises liability action brought by Martin Bellorin for an injury

he incurred while employed as a valet by American Parking Systems, Inc. ("APS"), the defendant Bal Harbour Tower Condominium Association, Inc. (the "association") appeals a nonfinal order denying its motion for final summary judgment and determining that it is not entitled to workers' compensation immunity. Because the association had a contractual obligation under the relevant declaration of condominium to provide valet services and sublet that obligation to APS, we conclude that the association was Bellorin's statutory employer under section 440.10(1)(b), Florida Statutes (2021). The association is therefore entitled to statutory employer immunity under workers' compensation law. Accordingly, we reverse the order denying the association's motion for final summary judgment on the ground of workers' compensation immunity, and remand for further proceedings.

## BACKGROUND

The Bal Harbour Tower Condominium was established under chapter 718, Florida's Condominium Act, by recording its declaration of condominium. See § 718.104(2), Fla. Stat. (Supp. 1990). Section 8 of the declaration of condominium is entitled "Ownership of Common Elements and Restrictions Thereto," and relevantly includes a subsection addressing parking spaces:

2

c. Automobile Parking Spaces - The parking areas of the condominium contain Two Hundred Fifty Six (256) individual parking spaces . . . . No guests, employees, invitees, servants or agents of unit owners shall ever self-park an automobile in the parking areas of the condominium even if said parking space has been assigned to the unit owner by the developer. Valet parking service shall be available and shall provide for not only the parking of all unit owners' automobiles but also parking for owners' second vehicles, if any, and vehicles of guests, invitees and the authorized lessees of the unit -owner. In addition thereto, parking valet service shall provide for developer parking for prospective unit purchasers and such other parties as the developer may reasonably determine, so long as developer has units for sale.

The association, through its directors and officers, shall and it is hereby authorized to, contract for the parking needs of the condominium unit owners and their lessees, guests and invitees and employees so as to provide a doorman and valet parking service at all times. The charge for the doorman and valet parking service shall be a common expense of the condominium and not a charge against those specific unit owners requesting such service. . . .

All unit owners, their lessees, guests and invitees shall use and be subject to "valet parking" rules and regulations promulgated from time to time by the board of directors in connection with same.

The association entered into a contract with APS to manage and operate valet parking services at the Bal Harbour Tower Condominium. The contract required APS to maintain workers' compensation insurance, and the record

3

shows that APS acquired that coverage.

Bellorin worked for APS as a valet at the Bal Harbour Tower Condominium. Bellorin's duties included carrying luggage to condominium units. While he was delivering luggage, Bellorin was injured when a plastic panel fell from the ceiling of the service elevator and hit his head. Bellorin subsequently filed suit against the association alleging negligence based on premises liability and seeking damages for his injury.

The association moved for final summary judgment, asserting that it was Bellorin's statutory employer pursuant to section 440.10(1)(b) because it sublet to Bellorin's employer, APS, its contractual obligation to provide valet services to unit owners. As such, the association claimed it was entitled to workers' compensation immunity from civil liability under section 440.11, Florida Statutes (2021). Bellorin responded that the association was not his statutory employer because it was not contractually obligated to provide valet services, and that, as a statutory entity, the association's "duty to provide tasks" arises only by statute. After a hearing, the trial court denied the association's motion for final summary judgment, finding that "Worker's Compensation Immunity does not apply to the [association] in this case because the Declaration of Condominium and By-Laws are not a contract, and therefore, do not impose a contractual obligation upon the [association]

4

to provide valet parking services." This appeal followed.[1]

## STANDARD OF REVIEW

We review a trial court's summary judgment order determining that a party is not entitled to workers' compensation immunity as a matter of law de novo. See Tampa Elec. Co. v. Gansner, 327 So. 3d 1281, 1283 (Fla. 2d DCA 2021); St. Lucie Falls Prop. Owners Ass'n v. Morelli, 956 So. 2d 1283, 1284 (Fla. 4th DCA 2007).

## ANALYSIS

As below, the association argues that under the condominium's governing documents, specifically, the declaration of condominium, it has a contractual obligation to provide valet services to unit owners at the Bal

---

[1] Because the face of the order shows that the trial court determined the association was not entitled to workers' compensation immunity as a matter of law, we have jurisdiction to review the nonfinal order denying summary judgment under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(v) (authorizing appeals from nonfinal orders that "determine . . . as a matter of law, a party is not entitled to workers' compensation immunity"). See Fla. Highway Patrol v. Jackson, 288 So. 3d 1179, 1182, 1184 (Fla. 2020); Miami–Dade Cnty. v. Pozos, 242 So. 3d 1152, 1156 (Fla. 3d DCA 2017) (explaining that nonfinal orders denying summary judgment on a claim of workers' compensation immunity are not appealable unless there is "a 'determination, on the face of the order' that the defendant, as a matter of law, is precluded from asserting workers' compensation immunity"); cf. Amcon Builders, Inc. v. Pardo, 120 So. 3d 1254, 1254 (Fla. 3d DCA 2013) (dismissing appeal of nonfinal order denying employer's motion for summary judgment based on workers' compensation immunity where order "simply denie[d] a motion for summary judgment based on insufficient evidence" and made "no determination on the issue of workers' compensation immunity").

Harbour Tower Condominium, such that it is entitled to workers' compensation immunity as Bellorin's statutory employer under section 440.10(1)(b). This subdivision provides:

> (b) In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.

§ 440.10(1)(b). "For the association to be a contractor (and thus [Bellorin's] statutory employer) under section 440.10, it must show that it has a contractual obligation to provide [valet] services to the unit owners," Smith v. Mariner's Bay Condo. Ass'n, Inc., 789 So. 2d 1228, 1229 (Fla. 3d DCA 2001), and that it "sublet[ ] any part or parts of [the] contract work to a subcontractor," § 440.10(1)(b). See Mathis v. Sacred Heart Health Sys., Inc., 187 So. 3d 951, 952 (Fla. 1st DCA 2016); Miami Herald Publ'g. v. Hatch, 617 So. 2d 380, 382–84 (Fla. 1st DCA 1993). "To be considered a contractor under section 440.10, [the association's] 'primary obligation in performing a job or providing a service must arise out of a contract.'" Tampa Elec. Co., 327 So. 3d at 1284 (quoting Sotomayor v. Huntington Broward Assocs. L.P., 697 So. 2d 1006, 1007 (Fla. 4th DCA 1997)). See Smith, 789 So. 2d at

6

1229 ("As a contractor, the association's primary obligation in providing security services to its residents must arise out of a contract."). "Furthermore, the 'primary obligation' refers to an obligation under the prime contract between the contractor and a third party, not to any agreement between the contractor and subcontractor." Miami Herald Publ'g., 617 So. 2d at 383. Notably, "[t]he contractual obligation may be either express or implied-in-fact; however, it cannot be based on a duty purely imposed by statutory or common law." Smith, 789 So. 2d at 1229 (citing Woods v. Carpet Restorations, Inc., 611 So. 2d 1303, 1304 (Fla. 4th DCA 1992)).

Here, there is record evidence that the association owed a contractual obligation to third parties, i.e., unit owners, to provide valet services for them as well as their guests, employees, invitees, servants or agents. This is so because "[a] declaration [of condominium] operates as a contract among unit owners and the association, outlining their respective rights and responsibilities." Williams v. Salt Springs Resort Ass'n, Inc., 298 So. 3d 1255, 1260 (Fla. 5th DCA 2020). Accord Cohn v. Grand Condo. Ass'n, Inc., 62 So. 3d 1120, 1121 (Fla. 2011) ("A declaration of condominium possesses 'attributes of a covenant running with the land' and *operates as a contract among unit owners and the association*, 'spelling out mutual rights and obligations of the parties thereto.'") (emphasis added) (quoting Woodside

7

Vill. Condo. Ass'n v. Jahren, 806 So. 2d 452, 456 (Fla. 2002)); Dimitri v. Com. Ctr. of Miami Master Ass'n, Inc., 253 So. 3d 715, 718 (Fla. 3d DCA 2018) ("An association declaration is a contract . . . ."); 814 Prop. Holdings, LLC v. New Birth Baptist Church Cathedral of Faith Int'l, Inc., 47 Fla. L. Weekly D1500 (Fla. 3d DCA July 13, 2022); LEN-CG S., LLC v. Champions Club Condo. Ass'n, Inc., 336 So. 3d 1245, 1248 (Fla. 5th DCA 2022).

Although the statutory scheme set forth in the Condominium Act also governs the legal rights and responsibilities of the association and unit owners, see Woodside Vill. Condo. Ass'n, 806 So. 2d at 456 ("[B]ecause condominiums are creatures of statute courts must look to the statutory scheme as well as the condominium declaration and other documents to determine the legal rights of owners and the association."); Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1090 (Fla. 3d DCA 2014), the association's obligation here springs from the specific valet parking regulation set forth in section 8(c.) of the declaration of condominium. The Condominium Act does not obligate condominium associations to provide valet services to unit owners. Thus, the association's *primary* obligation to provide valet services to the unit owners arose under a contract, the declaration of condominium, and not from its general statutory duty to manage and maintain the condominium property. Compare Roberts v. Gator

8

Freightways, Inc., 538 So. 2d 55 (Fla. 1st DCA 1989) (holding that common motor carrier should be treated as statutory employer because primary obligation of carriage arose from contracts with customers, notwithstanding carrier's concurrent obligation to transport under federal regulations), approved, 550 So. 2d 1117 (Fla. 1989), and Tampa Elec. Co., 327 So. 3d at 1284 ("Tampa Electric's status as a statutory employer would not be defeated by the existence of a regulatory obligation that overlaps with a corresponding contractual obligation to maintain the equipment." (citing id.)), with Woods, 611 So. 2d at 1303 (holding, without discussing declaration of condominium, that condominium association that entered into contract with company to manage the condominium property was not a statutory employer entitled to immunity from suit by injured employee of company because obligation to "manage and maintain the condominium property . . . . is purely statutory, not contractual"), and Smith, 789 So. 2d at 1230 (recognizing "that an entity that has a contractual obligation, all or part of which is sublet to another, is not exempt from being a statutory employer under section 440.10 merely because the performance of that obligation is regulated by statute," but holding that where record did not establish a contract between association and unit owners for security services, condominium association was not statutory employer in security guard's suit for damages from slip and

9

fall). The association, in turn, "sublet[ ]" this "contract work" to Bellorin's employer, APS. See § 440.10(1)(b), Fla. Stat. Therefore, because Bellorin's injury occurred while performing his duties as a valet for APS, the association was Bellorin's statutory employer under section 440.10(1)(b), and the association was entitled to workers' compensation immunity. See Miami-Dade County v. Acosta, 757 So. 2d 539, 541 (Fla. 3d DCA 2000).

**CONCLUSION**

As well-established Florida law provides that a declaration of condominium operates as a contract, the trial court erred in finding that the association did not have a contractual obligation to provide valet services to unit owners under section 8(c.) of the declaration of condominium, thereby determining that the association was not entitled to workers' compensation immunity as Bellorin's statutory employer. See §§ 440.10(1)(b), .11, Fla. Stat. Accordingly, we reverse the nonfinal order denying the association's motion for final summary judgment based on workers' compensation immunity and remand for further proceedings consistent with this opinion.

Reversed and remanded.