Janet Lucas BREENE and A. William Lucas, Plaintiffs and Appellees,

v.

PLAZA TOWER ASSOCIATION, a corporation, Defendant and Appellant.

Civ. No. 9957.

Supreme Court of North Dakota.

Oct. 5, 1981.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for plaintiffs and appellees; argued by A. William Lucas, Bismarck.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellant; argued by Brian R. Bjella, Bismarck.

SAND, Justice.

This is an appeal by the defendant, Plaza Tower Association [hereinafter referred to as Association] from a summary judgment granted in favor of the plaintiffs, Janet Lucas Breene and A. William Lucas [hereinafter referred to as Breene], in which certain amendments to the by-laws of Plaza Tower were declared not legally binding upon Breene, and further, that any amendments that may be made to the declaration of restrictions of Plaza Tower would have only a prospective effect.

On 10 May 1974 Breene purchased unit 4D in the Plaza Tower condominium in the city of Bismarck, North Dakota. The association is a corporation organized under the North Dakota condominium statutes (Ch. 47–04.1, North Dakota Century Code) for the purpose of serving as managing and governing body for the condominium. When Breene purchased the interest in the condominium, there was no restriction relating to the sale or lease of the unit other than a provision giving the association the right of first refusal to purchase or lease the unit. The first-refusal option was in the association's bylaws by reference and specifically in the declaration of the condominium. At the time Breene purchased the unit, the declaration contained a provision which provided that the declaration could be amended at any regular or special meet-

ing of the association by a vote of three-fourths of the members of the association.[1]

On 14 May 1979 the association passed and adopted an amendment to its bylaws. The amended bylaw in substance provided that all units of the condominium were to be occupied by the unit owner and that the leasing of a unit to a non-owner was prohibited except in the following situations:

"a. An owner may enter a short term lease not to exceed four months provided the owner shall occupy the unit during the remainder of the calendar year within which the four month lease is granted.

"b. Leases which are in existence at the time this article is adopted shall not be impaired, but shall be permitted to continue during the designated lease term. Leases existing at the time of adoption of this article shall not be renewed or extended except to the extent that said renewal or extension would be in compliance with paragraph (a) above. Any month to month lease in existence at the time this article is adopted shall be terminated within three months of the adoption of this article.

"c. *Hardship Clause.* In the event that an owner, due to medical or health reasons or other justifiable cause constituting a hardship, shall be unable to occupy his unit for a period in excess of four months and based on said hardship desires to lease said unit, the owner shall make application to the Board of Directors which may, by majority vote and subsequent to a review of the application, grant to the owner an exception to the general leasing policy.

"d. This article shall not affect any unit which has been leased to the same tenant(s) by an owner in excess, of three years, except that upon termination of any such tenancy in effect upon the date of adoption of this article all of the provisions of this article shall apply."

The amendment to the bylaws was not recorded in the office of the register of deeds of Burleigh County, pursuant to NDCC § 47–04.1–07.

By a letter dated 7 Nov. 1980, Breene requested permission from the president of the Association (Albert Hartl) to rent the condominium unit to another party. However, the request was denied, and Breene commenced the present action to declare the Association's bylaws invalid as applied to unit 4D and to enjoin the Association from enforcing its bylaws against Breene.

Breene subsequently brought a motion for summary judgment and a hearing on that motion was held on 2 Feb. 1981. The district court granted Breene's motion in a memorandum opinion dated 3 Feb. 1981 and a judgment was entered on 9 Feb. 1981. A notice of appeal to this Court was filed on 11 Mar. 1981.

On 9 Feb. 1981, the same day the summary judgment was entered, the Association adopted two amendments to the declaration which placed restrictions on the right to lease which were similar to those contained in the bylaws adopted on 14 May 1979. The amendments to the declaration were recorded with the register of deeds of Burleigh County on 11 Feb. 1981.

The district court's memorandum opinion indicates that the subject matter before the court was tacitly heard and decided as if

1. This provision provides as follows:

"This Declaration may be amended at any regular or special meeting of the Association called or convened in accordance with the Bylaws by the affirmative vote of the voting members casting not less than three-fourths (3/4ths) of the total vote of the members of the Association. Each amendment shall be certified by the president and secretary of the Association as having been duly adopted and shall be effective when recorded in the office of the Register of Deeds of Burleigh County, North Dakota. No such amendment shall change any condominium parcel or a condominium unit's proportionate share of the common cost and expenses, nor the voting rights appurtenant to any unit unless all record owners thereof and all record owners of mortgages or other liens which have been voluntarily placed on a unit shall join in the execution of the amendment. No amendment shall be effective which shall impair or prejudice the rights or priorities of any mortgages or change the provisions of this Declaration with respect to mortgages without the written approval of the mortgagees of record."

the amendment to the declaration had been adopted and recorded with the register of deeds' office.[2] Further, the judgment provided, in pertinent part, as follows:

"3.

"That any amendment to the declaration of restrictions of Plaza Tower Association which may be made or may become effective shall have prospective effect only, and shall not have any retroactive effect, and shall have no effect on owners of condominium units at the time such an amendment to the declaration should become effective."

Plaza Tower raised the following issue for our review:

Whether or not an amendment to the Declaration of a Condominium, restricting the use of an individual unit, may be applied retroactively to persons who had purchased a unit prior to promulgation of the amendments?

Breene asserts that this question was not a part of the declaratory judgment action and not part of the motion for summary judgment and, therefore, is not properly before this Court on appeal.

■ The judgment contains language giving only prospective effect to any amendment to the declaration of restrictions. Furthermore, the memorandum opinion contains similar language which reflects that the matter was tacitly heard and decided. Based on this, it is apparent that the district court judge considered the pending amendment to the declaration and tailored his ruling to deal with the amendment. Because of this we believe the issue concerning the amendment to the declaration is properly before this Court.

The issue for our review must be resolved within the procedural framework of Rule 56, North Dakota Rules of Civil Procedure and our summary judgment law.

■ Summary judgment is a procedural device available for the prompt and expeditious disposition of a controversy without a trial if there is no dispute as to either the material facts and the inferences to be drawn from undisputed facts, or whenever only a question of law is involved. *Herman v. Magnuson*, 277 N.W.2d 445 (N.D. 1979); *Zuraff v. Empire Fire & Marine Insurance Co.*, 252 N.W.2d 302 (N.D. 1977).

■ Although it is inherent in the condominium concept that each unit owner must give up a certain degree of freedom of choice he might otherwise enjoy in separate, privately owned property, the condominium concept must operate within the applicable statutes as well as the constitutions.

■ The statutory provisions relating to condominiums requires that the declaration of condominium, the restrictions, and the bylaws must be recorded in the office of the register of deeds in the county where the property is located. NDCC §§ 47–04.1–02, 47–04.1–04, 47–04.1–07. These statutory provisions contemplate a method to put prospective purchasers and owners on notice as to the restrictions and bylaws which affect their interest in the property. A prospective purchaser's decision to buy a particular unit in a condominium may be based upon the recorded restrictions which encumber that unit. In order to exercise the decision to purchase a unit, the prospective buyer must be aware of restrictions on the use of the unit.

Of particular importance to the issue presented in this appeal is NDCC § 47–04.1–04, which deals with the requirements of a declaration of restrictions and provides, in part, as follows:

"The owner of a project shall, *prior to the conveyance of any condominiums therein*, record a declaration of restrictions relating to such project which restrictions shall be enforceable equitable servitudes where reasonable, and shall inure to and bind all owners of condominiums in the project." [Emphasis added.]

---

2. The sequence of events, however, establishes that the amendment to the declaration was not adopted until after the judgment was entered.

The judgment, and the record does not otherwise suggest how the amendment to the declaration was raised.

This language contemplates that notice of restrictions through the recording procedures must be given to prospective buyers prior to the conveyance of any condominium unit. Although the statute provides that the restrictions shall be enforceable equitable servitudes, the statute also provides that a prerequisite to the enforceability is that the restriction be recorded prior to the conveyance of any condominium unit. A necessary corollary of this is that a restriction adopted after the purchase of a condominium unit would not be enforceable against the purchaser except through the purchaser's acquiescence.

We are cognizant that the benefits of statutory provisions may be waived. NDCC § 1–02–28. However, waiver requires knowledge of the rights intended to be waived and a voluntary and intentional relinquishment of those known rights. *Public Service Commission v. American Grain and Cattle*, 281 N.W.2d 48 (N.D. 1979). In this instance there is no indication and the issue was not raised that Breene waived the statutory rights contained in NDCC § 47–04.1–04. It is true, however, that the declaration provides that it may be amended, see footnote 1, and such a provision for an amendment may be broadly construed as a waiver of the rights contained in NDCC § 47–04.1–04. However, knowledge of the provisions for amendment does not, without more, constitute the degree of knowledge necessary to establish a voluntary and intentional relinquishment of the statutory right to notice of a restriction prior to the purchase of a condominium unit.

The Association cited several cases which they assert support their position and provide authority for imposing leasing restrictions retroactively by adopting an amendment to the declaration. We believe these cases are distinguishable.

*Le Febvre v. Osterndorf*, 87 Wis.2d 525, 275 N.W.2d 154 (Wis.App. 1979), involved a bylaw of a condominium which forbade the rental of condominium units. However, the particular bylaw was in effect when the buyer purchased his condominium unit and was not adopted, as in the instant case, after the buyer purchased his condominium unit.

Both *Seagate Condominium Association, Inc. v. Duffy*, 330 So.2d 484 (Fla.App. 1976) and *Ritchey v. Villa Nueva Condominium Association*, 81 Cal.App.3d 688, 146 Cal. Rptr. 695, 100 A.L.R.3d 231 (1978) involved amendments to impose leasing restrictions which were adopted after the condominium unit was purchased. However, neither of these cases were decided in jurisdictions with a statutory provision such as NDCC § 47–04.1–04.

Although the California statute is somewhat similar, that statute goes on to provide for amendments to restrictions and that those amendments "shall be binding upon every owner and every condominium subject thereto whether the burdens thereon are increased or decreased thereby, and whether the owner of each and every condominium consents thereto or not." Cal. Civ. Code § 1355(c)(West).

The Florida statutes provide that the declaration "may include such covenants and restrictions concerning the use, occupancy and transfer of units as permitted by law." Fla.Stat. § 711.08(2). Additionally, "an amendment of a declaration shall become effective when recorded according to law." Fla.Stat. § 711.10(1).

These statutory provisions in essence permit amendments to the declaration of restrictions after a condominium is purchased and are not contained in the North Dakota statutes.

We have no doubt that amendments to the bylaws could be adopted which would be enforceable against those currently owning a condominium unit. However, these bylaws, pursuant to NDCC § 47–04.1–07, would have to relate to "maintenance of common elements, limited elements where applicable, assessment of expenses, payment of losses, division of profits, disposition of hazard insurance proceeds and similar matters." The action in the instant case is not within the scope of the subject matter of a bylaw and is, instead, governed by

the provisions of NDCC § 47–04.1–04 relating to restrictions.

 If the contentions of the Association that the amendments are retroactive and apply to current owners, then the statutory provisions in NDCC § 47–04.1–04 requiring the recording of restrictions prior to any conveyance would in effect be treated as a nullity. This we cannot justifiably do. We are aware that NDCC Ch. 47–04.1 does not define "restrictions." In the absence of a definition, we believe "restrictions" within the context of Ch. 47–04.1 refers to restrictive covenants. However, it may be beneficial for the Legislature to enact a definition of "restrictions" indicating either what is embraced or excluded in the term.

Because the effect of the Association's amendment of the declaration of restrictions does not involve a genuine issue of material fact and the court construed and applied the applicable law correctly, we conclude that the district court properly entered summary judgment in favor of Breene, and accordingly the judgment is affirmed.

ERICKSTAD, C.J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.