waived the right to assign error concerning the matter. *Stores Realty Co. v. Cleveland Bd. of Bldg. Stds.* (1975), 41 Ohio St. 2d 41, 70 O.O. 2d 123, 322 N.E. 2d 629. This assignment of error will be overruled.

## VI

### References to Law

During his closing argument, appellant Enix made a general reference to the decision of the United States Supreme Court in *Roe* v. *Wade, supra.* The trial court ordered him to discontinue such references. In their ninth assignment of error, appellants argued that the court erred in its order. We do not agree. The function of the jury was limited to determinations of fact, and general references to the rule or wisdom of the Supreme Court in *Roe* v. *Wade, supra,* were not proper for the jury's consideration. Any instruction or comment on the law given for the benefit of the jury must come from the court, not from the parties. The assignment of error will be overruled.

## VII

### Manifest Weight of the Evidence

Appellants argue in their twelfth assignment of error that they should have been acquitted of the charges against them because the notice to leave read to them stated that no abortions were being performed in the facility that day, while the weight of the evidence shows that the first steps of an abortion procedure were being performed there on that day. The notice was relevant only to the question of whether appellants had a right to be in the facility, and whether abortions were being performed at the facility on that occasion or on any other date is not relevant to the charge. To the extent that it involves the defense of "necessity," it is not applicable to the case or to the determinations of the jury. The assignment of error will be overruled.

## VIII

### Conclusion

Having overruled the assignments of error offered by each of the appellants, we find that the judgment and decision of the trial court should be affirmed. It is so ordered.

*Judgment affirmed.*

BROGAN, FAIN and GRADY, JJ., concur.

WORTHINGLEN CONDOMINIUM UNIT OWNERS' ASSOCIATION, APPELLANT, *v.* BROWN, APPELLEE, ET AL.

74

(No. 89AP-254—Decided December 12, 1989.)

*Jones & Troyan* and *John R. Perkins, Jr.*, for appellant.

*Cynthia H. Kramer,* for appellee.

BRYANT, J. Plaintiff-appellant, Worthinglen Condominium Unit Owners' Association ("Worthinglen"), appeals from a judgment of the Franklin County Court of Common Pleas holding an amendment to the condominium declaration to be unenforceable.

Plaintiff sets forth the following as its sole assignment of error:

"The court erred, as a matter of law, in holding that an amendment to a condominium declaration prohibiting unit owners from leasing their units is unenforceable against owners who acquired condominium units prior to the adoption of that amendment."

Plaintiff is a condominium unit owners' association. On March 10, 1988, plaintiff amended the Worthinglen condominium declaration to include a provision that stated, in part:

"No unit shall be used for any other purpose other than a dwelling place for a single family and for purposes necessarily incidental thereto. Notwithstanding any other provision of this Declaration, Exhibits, or By-Laws, each unit shall be occupied by the owner of that unit, and no leasehold interest or general tenancy in others shall be created by the owner of any unit. The above requirement of owner occupancy and prohibition against leasehold interests or general tenancies shall become effective within ninety (90) days of the recording of an amendment creating such a requirement and prohibition with the office of the Franklin County Recorder, providing that such amendment shall not affect the existing term of any lease in effect at the time of such recording."

At the time the owners amended the declaration, defendant-appellee, Jacqueline L. Brown, owned one unit at Worthinglen, which she leased to third parties. The "grandfather" clause in the amendment allowed her existing lease to continue. However, when defendant's tenants moved out in October 1988, defendant sought to lease her unit to defendants Mr. and Mrs. Yamada.

On October 28, 1988, plaintiff filed an action in the court of common pleas, apparently pursuant to R.C. 5311.19, seeking a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent defendant from leasing her unit to the Yamadas. On November 30, 1988, a referee recommended that the trial court deny plaintiff injunctive relief. On December 1, the trial court adopted the referee's report and plaintiff appealed to this court.

This case launches the court into largely uncharted waters of Ohio law. While other states have set forth parameters regarding the validity of various condominium rules, Ohio jurisdictions for the most part have not. In such a situation, we are tempted to analogize to existing defined areas of the law and apply the interpretations and limits found therein to the condominium issue before us. However, condominiums are unique. More specifically, unlike neighborhoods consisting of single-family dwellings, condominium associations may make rules governing all unit owners, with the approval of a supermajority of the

owners. Moreover, given the need in condominium living for a stable environment with the concomitant relinquishing of some measure of individuality, as well as the central role played by the condominium's restrictive scheme in the lives of the current and future owners, we find that none of the readily available analogies so squarely meshes with the issues presented herein as to allow resolution by any single analogy. Indeed, whether we attempt to derive a solution by comparison to real estate or zoning law, corporate law (the business judgment rule), administrative law (review of administrative rule making), or constitutional review (application of *Shelley* v. *Kraemer* [1948], 334 U.S. 1), each of the individual theories is lacking in some respect, and may indeed result in different conclusions. Note, Judicial Review of Condominium Rulemaking (1981), 94 Harv. L. Rev. 647 (hereinafter "Note").

Hence, we decline to apply by analogy a single, defined body of law to the issue herein. Instead, we examine condominium rules and regulations in the context of the unique character of condominium living. In so doing, we note that a purchaser of a condominimum unit voluntarily submits himself to the condominium form of property ownership, which requires each owner to "* * * give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization. * * *" *Hidden Harbour Estates, Inc.* v. *Norman* (Fla. App. 1975), 309 So. 2d 180, 182. See, also, *Georgetown Arms Condominium Unit Owners' Assn.* v. *Super* (1986), 33 Ohio App. 3d 132, 134, 514 N.E. 2d 899, 901

(* * * "[T]he condominium concept depends upon reasonable use and occupancy rules and restrictions. * * *"); R.C. 5311.05(B)(3) (use restrictions).

Potential purchasers of condominium units should thus realize that the regime in existence at the time of purchase may not continue indefinitely and that changes in the declaration may take the form of restrictions on the unit owner's use of his property.

We do not, though, endorse the view that a person who voluntarily enters the ranks of condominium ownership surrenders all individual property rights. Individual property receives some protection in the condominium arrangement, although less than that accorded non-condominium property. An example of the protection is set forth in R.C. 5311.05(B)(9), which requires a supermajority (seventy-five percent) to pass amendments to the declaration.

In addressing nearly the identical issue, the court in *Seagate Condominium Assn., Inc.* v. *Duffy* (Fla. App. 1976), 330 So. 2d 484, 485, noted that restraints on alienation, including restrictions on leasing, are part of the law; only unlimited or absolute restraints are prohibited. As a result, the court chose to assess the validity of restraints by reference to their reasonableness.

We agree with *Seagate* and cases from Ohio and other jurisdictions which generally require that condominium rules meet a "reasonableness" test. See *River Terrace Condominium Assn.* v. *Lewis* (1986), 33 Ohio App. 3d 52, 57, 514 N.E. 2d 732, 737-738, at fn. 8; *O'Buck* v. *Cottonwood Village Condominium Assn., Inc.* (Alaska 1988), 750 P. 2d 813, 817; *Johnson* v. *Hobson* (D.C. App. 1986), 505 A. 2d 1313, 1317; *Hidden Harbour Estates, Inc.* v. *Norman, supra,* at 182. Accordingly, we adopt the reasonable-

ness test, pursuant to which the validity of condominium rules is measured by whether the rule is reasonable under the surrounding circumstances. If the rule is unreasonable, arbitrary or capricious in those circumstances, it is invalid.

In adopting the reasonableness test, we hope to balance the countervailing interests represented in any condominium rule dispute. As the court in *River Terrace Condominium Assn.* v. *Lewis, supra,* explained:

*"The first question in applying the test of reasonableness is whether the decision or rule was arbitrary or capricious.* This requires, among other things, that there be some rational relationship of the decision or rule to the safety and enjoyment of the condominium. *Hidden Harbour Estates, Inc.* v. *Norman* (Fla. App. 1975), 309 So. 2d 180; *Ryan* v. *Baptiste* (Mo. App. 1978), 565 S.W. 2d 196.

*"The second question is whether the decision or rule is discriminatory or evenhanded.* This may sound like a 'constitutional' consideration applicable only in case of 'state action,' see *Shelley* v. *Kraemer* (1948), 334 U.S. 1, but we believe it protects against the imposition by a majority of a rule or decision reasonable on its face, in a way that is unreasonable and unfair to the minority because its effect is to isolate and discriminate against the minority. It provides a safeguard against a tyranny of the majority.

*"The third question is whether the decision or rule was made in good faith for the common welfare of the owners and occupants of the condominium.* It is derived from *Rywalt* v. *Writer Corp.* (1974), 34 Colo. App. 334, 526 P. 2d

316, and *Papalexiou* v. *Tower West Condominium* (Ch. Div. 1979), 167 N.J. Super. 516, 401 A. 2d 280, in which the good faith required of a corporate board of directors is analogized to that required of a condominium board of managers. Both boards owe a duty of good faith in managing property held in common by a group of owners. We believe good faith is an essential ingredient of a reasonable decision or rule." (Emphasis added.) *Id.* at 57, 514 N.E. 2d at 737-738, fn. 8.

We agree that evaluation of any condominium rule under the reasonableness test requires an examination of the foregoing considerations, including the potential hardship to accrue as a result of the amendment. Included therein, by necessity, is not only a consideration of whether the surrounding circumstances render a restriction on an owner's use of his or her property reasonable, but also a determination of whether the rule has been reasonably implemented. Cf. *Winston Towers 200 Assn., Inc.* v. *Saverio* (Fla. App. 1978), 360 So. 2d 470 (bylaw amendment banning pets void and unenforceable against dog owner as attempt to impose retroactive regulation), and *Wilshire Condominium Assn., Inc.* v. *Kohlbrand* (Fla. App. 1979), 368 So. 2d 629, 631 (regulation, in existence when defendant purchased unit, permitting purchasers to retain dogs but forbidding dogs' replacement enforceable).[1] Similarly, in this case, the issue is not only whether plaintiff reasonably may restrict defendant's right to lease her unit, but also whether plaintiff reasonably may do so retroactively.[2]

Defendant, while not contending

---

[1] See Note, 94 Harv. L. Rev., *supra,* fn. 38, at 654.

[2] While *Seagate Condominium Assn., Inc.* v. *Duffy, supra,* found a retroactive restriction on alienation reasonable, we do not suggest that *Seagate* dictates the appropriate result herein, as the fact of *Seagate* included a transient tourist population not likely to be a motivating factor in plaintiff's adoption of the rule at issue.

that the leasing restriction is invalid in itself, urges that it is invalid insofar as it is retroactively applied against a unit owner who bought her unit before the restriction existed, in violation of the notice provisions of Ohio's condominium statutes. Defendant cites *Breene* v. *Plaza Tower Assn.* (N.D. 1981), 310 N.W. 2d 730, in support of her argument. The referee herein also relied on *Breene.*

The condominium association in *Breene* had amended its "declaration of restrictions" to include a provision restricting the unit owners' ability to lease their units. *Id.* at 732-733. The statute involved in that case stated:

" 'The owner of a project shall, *prior to the conveyance of any condominiums therein,* record a declaration of restrictions relating to such project which restrictions shall be enforceable equitable servitudes where reasonable, and shall inure to and bind all owners of condominiums in the project.' " (Emphasis *sic.*) *Id.* at 733.

The *Breene* court declared that the lease restriction in question was "not legally binding upon Breene" and that any future amendments "would have only a prospective effect." *Id.* at 731. The court noted that the statute required an owner to record all restrictions on the condominium property before conveyance of the property. Since the restriction in *Breene* had not been recorded at the time the unit owners involved in the case had purchased their unit, the court reasoned that the restriction was not binding on the unit owners because the owners had not received notice of the restric-

tion pursuant to the statute. *Id.* at 733-734.

We find the reasoning in *Breene* unpersuasive. Although we note some similarities in the respective facts and statutes involved,[3] we, nevertheless, do not agree with the North Dakota Supreme Court's conclusion that a lease restriction can never be enforced against owners who purchased their units before the restriction was recorded, nor do we believe that retroactive enforcement of a restriction would render any Ohio statutory notice provision a "nullity." *Breene, supra,* at 735. A condominium declaration could satisfy the statutory right to notice of a restriction prior to the purchase of a condominium unit, *id.* at 734, if it adequately set forth whatever restrictions existed at the time of purchase. Moreover, application of defendant's contentions would create a lack of uniformity in condominium living that undermines one of the purposes of condominium rules and regulations.

Defendant also contends more broadly that R.C. 5311.05(B)(9), which requires a declaration to state "[t]he method by which the declaration may be amended," does not sufficiently inform a potential purchaser of a condominium unit of the restrictions that could be placed on his unit. See *Breene, supra,* at 734 ("knowledge of the provisions for amendment" does not constitute adequate notice). However, if a declaration has provided notice under R.C. 5311.05(B)(9) to a potential purchaser that the condominium association may amend the declaration, then the fact that the purchaser has not

---

[3] Ohio's condominium statutes, like North Dakota's, require condominium owners to record property restrictions. R.C. 5311.05(B)(3) requires the condominium developer to record a declaration, which must set forth "[t]he purpose or purposes of the condominium property and the units and commercial facilities situated therein and the restrictions, if any, upon the use or uses thereof[.]" The condominium association must also record amendments to the declaration. R.C. 5311.08(A).

foreseen a *particular* amendment is not dispositive.

Given the foregoing, we sustain plaintiff's single assignment of error to the extent set forth above. We reverse the judgment of the trial court and remand this matter for consideration of the reasonableness of plaintiff's amendment to the declaration, including the retroactive application thereof, in light of the facts and circumstances present at the time the amendment to the declaration was adopted. Inasmuch as the foregoing opinion addresses issues perhaps not reasonably anticipated by the parties, the trial court on remand may take such additional evidence as may be necessary to determine this action under the guidelines this opinion sets forth.

*Judgment reversed
and cause remanded.*

McCORMAC, P.J., concurs.

WHITESIDE, J., concurs in judgment only.

WHITESIDE, J., concurring in judgment only. Although I concur in the judgment of reversal and remand, I cannot concur in some of the conclusions and reasons expressed in the majority opinion.

First, Ohio law, like North Dakota law, has an explicit requirement that "restrictions" be recorded prior to conveyance. Hence, *Breene* v. *Plaza Tower Assn.* (N.D. 1981), 310 N.W. 2d 730, cannot be distinguished on that basis. See R.C. 5311.06(C).

The problem is that Ohio law *does not* expressly provide for use restrictions. R.C. 5311.05 sets forth the provisions that may be included in the declaration and makes no reference to use restrictions. Rather, only R.C. 5311.19 refers to restrictions and requires unit owners to "* * * comply with all covenants, conditions, and restrictions set forth in a deed to which they are subject or in the declaration, bylaws of the unit owners association, or administrative rules and regulations * * * as any of the same may be lawfully amended from time to time * * *." It is far from clear that new use restrictions can be imposed so as to prevent *continued use* of a unit for a purpose which was permitted prior to the amendment.

Likewise, I cannot concur in the statement in the majority opinion that we cannot "* * * derive a solution by comparison to real estate or zoning law * * *." First, it is solely real estate law issues that confront us; an analogy would be to deed restrictions. Second, zoning law is directly analogous and we are remiss if we fail to consider the real estate law issues before us in light of the existing law pertaining to use restrictions, namely, deed restrictions and zoning. The test for both is the test adopted in the majority opinion, namely, reasonableness. Even the nonconforming-use doctrine of zoning is a rule of reasonableness, it being unreasonable to prohibit a use which is in existence because of the economic hardship imposed. Additionally, the analogy to nonconforming-use principles is as about as close as any analogy can be. A legislative body (the unit owners' association in this instance) has previously adopted use restrictions and now changes them to make "illegal" a use that was previously permitted, about as close as any analogy can be. The question is whether the new use restrictions adopted by amendment can properly be applied to abolish a use which was established and permitted under the use restrictions prior to the amendment.

Upon remand, the trial court should explore all tests of reasonable-

ness. No analogy is ever complete. However, the relationship involved in developing deed restrictions under real estate law and even zoning under public law is about as close as any analogy can be. To cast them aside on the assumption that ''condominiums are unique'' is unrealistic. Additionally, the value judgments expressed are more appropriate for the legislative mind than for the judicial mind. In fact, the condominium declaration and bylaws are nothing more than restrictive covenants akin to those in a subdivision declaration. See, *e.g.*, *Dixon* v. *Van Sweringen Co.* (1929), 121 Ohio St. 56, 166 N.E. 887, and *Berger* v. *Van Sweringen Co.* (1966), 6 Ohio St. 2d 100, 35 O.O. 2d 127, 216 N.E. 2d 54. We are blessed with a body of law and precedent upon which to build and we should not put on ''blinders'' and ''reinvent'' the wheel.

Thus, although I concur in the judgment, I do not concur in the majority opinion.