2005 ND 26

**RIVERSIDE PARK CONDOMINIUMS UNIT OWNERS ASSOCIATION, a North Dakota Nonprofit Corporation, Plaintiff, Appellee and Cross–Appellant**

v.

**A. William LUCAS, Defendant, Appellant and Cross–Appellee.**

No. 20040014.

Supreme Court of North Dakota.

Jan. 25, 2005.

Rehearing Denied March 28, 2005.

Monte L. Rogneby, Vogel Law Firm, Bismarck, N.D., for plaintiff, appellee and cross-appellant.

A. William Lucas, Bismarck, N.D. pro se.

VANDE WALLE, Chief Justice.

[¶ 1] A. William Lucas appealed a district court judgment entered November 10, 2003, and memorandum opinions and orders dated July 15, 2002; October 29, 2002; January 21, 2003; April 28, 2003; July 29, 2003; September 10, 2003; and October 6, 2003, in an action by Riverside Park Condominiums Unit Owners Association ("Association") to enforce a pet restriction. The Association cross-appealed from a judgment provision denying its motion for attorney fees. We affirm.

I

[¶ 2] On September 27, 1977, the owners of certain real property filed with the Burleigh County Register of Deeds a declaration of covenants and restrictions stating they had filed a Declaration of Project declaring the property was "to be developed as a condominium project pursuant to Chapter 47–04.1," N.D.C.C., and stating they had incorporated the Association to administer the properties and enforce the covenants and restrictions. The declaration further provided:

I.

The covenants and restrictions contained herein shall be enforceable equitable servitudes, and shall inure to and bind all owners of units in the project....

III.

Each unit owner shall comply strictly with said bylaws and with the administrative rules and regulations adopted

pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions, and restrictions set forth herein.

. . . .

XV.

The covenants herein shall and are to run with the land, and shall be binding upon all of the parties and all persons claiming under them.

XVI.

No animals, livestock or poultry of any kind, except domestic pets, shall be raised, bred, or kept by any unit owner or unit resident. All domestic pets must be kept under control at all times by the unit owner or unit resident.

In 1990, the declaration of covenants and restrictions was amended by two-thirds of the unit owners and filed with the Burleigh County Register of Deeds. The amended declaration changed Paragraph XVI to provide:

No animals, livestock, poultry of any kind, or domestic pets, shall be raised, bred, or kept by any unit owner or unit resident, except that any domestic pet residing with a unit owner or unit resident on the date of the execution of this Amendment shall be excluded from this prohibition and be permitted to reside with said unit owner or unit resident.

Lucas bought a unit within the project in 1999.

[¶ 3] The Association sued Lucas, alleging, among other things, that "[o]n a regular basis, Lucas has kept and raised a dog at his unit," Lucas has "stated he could have a dog because he has 'high

blood pressure,' " and has said "he was not requesting an accommodation under the Fair Housing Act," but "will claim the need for an accommodation under the Fair Housing Act in the event a court holds valid the restrictive covenant prohibiting pet ownership." The Association sought an injunction prohibiting Lucas from keeping a pet in violation of the restrictive covenant or from maintaining a nuisance, a declaratory judgment that Lucas waived his rights under the Fair Housing Act or its provisions do not require the Association to accommodate Lucas' dog, damages, costs, disbursements and attorney fees.

[¶ 4] Lucas answered, denying that "[o]n a regular basis, Lucas has kept and raised a dog at his unit," asserted "that the Plaintiff Association did not follow proper procedures in attempting to amend the original Declaration of Covenants and Restrictions and therefore the attempted amendment to the Restrictive Covenants is invalid and not enforceable," admitted "he was not requesting an accommodation under the Fair Housing Act" but "will claim the need for an accommodation under the Fair Housing Act in the event a court holds valid the restrictive covenant prohibiting pet ownership," and asserted

13. Lucas is permitted to have an assistive (therapeutic) animal (dog) pursuant to the Federal Fair Housing Act (42 U.S.C. § 3601–3619) and other applicable Federal laws.

14. That this Court has no jurisdiction to make any determination under the Federal Fair Housing Act and the Federal Fair Housing Act supercedes all related North Dakota law.

15. Plaintiff's "pet restriction" is unreasonable, arbitrary, capricious, and discriminatory.

16. Plaintiff's selective application and enforcement of the "pet restriction" is unreasonable, arbitrary, capricious, and discriminatory.

17. Plaintiff's selective interpretation of the "pet restriction" and particularly the word "kept" is unreasonable, arbitrary, capricious, and discriminatory.

Lucas also presented counterclaims, asserting, among other things, the following factual allegations underlying his counterclaims:

29. Lucas is the owner of a condominium unit described as 112 Riverside Park Road immediately adjacent to the condominium unit owned by Board Member Thomas Prischmann. Lucas has not kept or maintained a dog at his unit, and is not in violation of any of the restrictive covenants of the condominium association.

30. The primary, permanent, and only residence where Lucas' former wife's dog Sugar is kept is at 1032 Highland Place, Bismarck, North Dakota.

31. The dog in question, named Sugar, is a West Highland White Terrier lap dog approximately ten inches high and weight probably ten to fifteen pounds at most.

32. Lucas' former wife's dog Sugar visits Lucas at irregular, infrequent times, probably approximately 24 days a year, with no scheduled times per month. The average visit would probably be two days per month; however, there are many months where there is no visit whatsoever.

33. Sugar is not a nuisance to a reasonable person. Sugar seldom and very infrequently barks.

34. Lucas is one of the very few condominium owners that is not violating any rules or restrictions of our condominium association.

Lucas presented twelve counterclaims: (1) for a declaration that the pet restriction is invalid; (2) alleging tree removal as a nuisance; (3) alleging a restriction prohibiting renting or leasing a unit is unreasonable; (4) for injunctive relief to compel compliance with restrictions about operating a business in a unit, trucks, boats, campers, dogs and cats; (5) alleging sidewalk drainage problems and negligence in not repairing the sidewalk; (6) alleging lack of authority to pay legal fees; (7) alleging interference with Lucas' right to quiet enjoyment of his condominium; (8) alleging the Association breached its fiduciary duty to him by suing him; (9) alleging misconduct of the Board of Directors with regard to the pet restriction and in suing Lucas, in installing different garage doors than Lucas had suggested, and in causing a reduction in the values of the units; (10) alleging emotional distress caused by the actions of an Association agent; (11) alleging abuse of process; and (12) alleging malicious prosecution.

[¶ 5] In a memorandum opinion and order issued July 15, 2002, the trial court dismissed counterclaims 2, 3, 5, 6, 7, 10 and 12 without prejudice. On October 29, 2002, the trial court issued an order granting, in part, the Association's motion to compel answers to interrogatories, production of documents and sanctions. On January 21, 2003, the court issued an order denying the Association's motion to strike paragraphs 13 and 14 of Lucas' answer, denying Lucas' motion for a default judgment, and sanctioning Lucas in the amount of $500 for failure to answer interrogatories and produce documents. In a memorandum opinion issued on April 28, 2003, the court granted the Association's motion for partial summary judgment, determining the pet restriction was properly adopted and Lucas was violating it. The court also affirmed an earlier order for a $500 sanction against Lucas for failure to comply with discovery and imposed a $1,000 sanction against Lucas for the Association's attorney fees in responding to Lucas' frivolous motion for default judgment. In a memorandum opinion issued on July 29, 2003, the trial court granted the Association's motion for summary judgment dismissing Lucas' five remaining counterclaims. On September 10, 2003, the court ruled on Lucas' objections to a proposed order for summary judgment, denied oral argument on the objections, denied a motion for stay of execution pending appeal, and set a hearing on other motions. On October 6, 2003, the court issued an order granting the Association's motion to dismiss its claims for nuisance and breach of fiduciary duty without prejudice, denied Lucas' motion for a stay pending appeal, and denied Lucas' motions for reconsideration, amendment, relief and alteration.

[¶ 6] On November 10, 2003, a judgment was entered that, among other things, (1) enjoined Lucas from violating the pet restriction, specifically prohibiting him "from having or keeping a dog in or at his unit or upon the common areas;" (2) granted the Association's motion for summary judgment for declaratory relief, declaring "Lucas does not have a valid claim for an accommodation under the Federal Fair Housing Act; or if he had a valid claim, the claim was voluntarily waived by his failure to make a valid request to the Association for an accommodation;" (3) granted the Association's motion to strike Lucas's amended answer and counterclaims; (4) dismissed all of Lucas's counterclaims with prejudice; (5) ordered Lucas to pay $500 as a sanction for his improper amended answer and counterclaims "in addition to the $1500 in

sanctions already paid by 'Lucas to the Association based on prior orders of this Court;" (6) denied the Association's "motion ·for attorney fees for defending against Lucas' counterclaims;" and (7) gave the Association a money judgment for "$500 plus costs and disbursements in the amount of $778.30 for a total money judgment of $1,278.30."

[¶ 7] Lucas raises the following issues on appeal:

1. Whether the trial court erred in granting Plaintiff's Motion for Partial Summary Judgment Regarding the "Pet Restriction."

2. Whether the trial court erred in sua sponte dismissing Defendant's affirmative defenses.

3. Whether the trial court erred in dismissing Defendant's counterclaims.

4. Whether the trial court erred in its decisions regarding the Federal Fair Housing Act.

5. Whether the trial court erred in assessing sanctions against Defendant and whether there was judicial misconduct.

The Association in its cross-appeal contends the trial court erred in denying its motion for attorney fees for defending against Lucas' counterclaims.

## II

[¶ 8] This case comes to us as an appeal from summary judgment. We have recently addressed our standard of review in such cases:

The standard of review for a grant of summary judgment is well-established. As this Court has stated:

Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. Whether summary judgment was properly granted is a question of law which we review de novo on the entire record. On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

*Zuger v. State*, 2004 ND 16, ¶ 7, 673 N.W.2d 615 (citations and internal quotations omitted). A party moving for summary judgment has the initial burden of "showing that there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts." *First State Bank of Casselton v. McConnell*, 410 N.W.2d 139, 141 (N.D. 1987) (citing *Northwestern Equipment, Inc. v. Badinger*, 403 N.W.2d 8, 9 (N.D. 1987)). "In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, and he must be given the benefit of all favorable inferences which can be reasonably drawn from the evidence." *Id.* Further:

A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations. Factual assertions in a brief do not raise an issue of material fact satisfying Rule 56(e). Nor may a party merely reas-

sert the allegations in his pleadings in order to defeat a summary judgment motion.

The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

Mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim. If no pertinent evidence on an essential element is presented to the trial court in resistance to a motion for summary judgment, it is presumed that no such evidence exists.

*Zuger*, at ¶ 8 (citations and internal quotations omitted).

*Charles McCauley Partnership, L.L.L.P. v. Tyrone Township*, 2004 ND 214, ¶ 3, 689 N.W.2d 410.

### III

[¶ 9] Lucas contends that the pet restriction was not properly adopted and is not enforceable, arguing: "The declaration and covenants of the Association did not contain a provision setting forth a procedure for amending them. North Dakota does not have a statute providing for the amendment of the declaration. Under those facts and law, the Association's covenants cannot be amended."

[¶ 10] The declaration of covenants and restrictions specified that a copy of the Association's bylaws was annexed thereto and made a part thereof. The annexed bylaws provided they could be amended at a meeting "by a vote of sixty-six and two-thirds percent (66–2/3rds%) of the unit owners present in person or by proxy, except in those matters where the Declaration, Articles of Incorporation, or these Bylaws specify a greater majority for action." Paragraph 15 of the declaration of covenants and restrictions was unanimously amended in 1996 before Lucas bought his unit to provide that covenants in the declaration of covenants and restrictions could be amended by written approval of 18 owners.

[¶ 11] The trial court rejected Lucas' argument that the declaration could not be amended because the original declaration did not contain a provision permitting amendment:

The Court does not agree with Lucas' argument or his conclusion. As pointed out by the Association, Lucas ignores N.D.C.C. § 47–04.1–07 and the fact that the Association's Bylaws are incorporated into the Association's covenants or declaration. It is undisputed that the Association's Bylaws provide that they may be amended by a two-thirds vote of unit owners. The Association followed the procedure set forth in its bylaws and in doing so properly amended its declaration.

This Court also finds it significant that in 1996 the unit owners *unanimously* added a provision allowing the declaration or restrictions to be amended on a two-thirds vote.... The 1996 Amendment clears up any question as to the intention of the unit owners.

Lucas has also not cited any authority or case squarely on point for his assertion that 100 percent of mortgage owners must consent to the amendment. The Arizona case of *Villas at Hidden Lakes Condominium Ass'n v. Geupel Construction Co. Inc.*, 174 Ariz. 72, 847 P.2d 117 (1993) is not helpful. The Court agrees with the Association's argument that the requirement of unanimity seems inconsistent with the concept of shared ownership in a condominium project. Because of the manner in which ownership in a condominium is structured each unit holder necessarily gives up some rights and privileges which normally accompanies fee ownership and agrees to subordinate those rights and privileges to the group's interest. *See Breene v. Plaza Tower Ass'n*, 310 N.W.2d 730, 733 (N.D.1981).

 [¶ 12] "[I]t is inherent in the condominium concept that each unit owner must give up a certain degree of freedom of choice he might otherwise enjoy in separate, privately owned property." *Breene v. Plaza Tower Ass'n*, 310 N.W.2d 730, 733 (N.D.1981). Condominium ownership is "based upon the principle of shared ownership and shared responsibility." *Agassiz West Condo. Ass'n v. Solum*, 527 N.W.2d 244, 246 (N.D.1995). "A condominium project functions as a quasi-government, and under N.D.C.C. § 47–04.1–07(1), its unit owners are responsible for its administration." *Agassiz*, at 246. Under a declaration to submit property to a condominium

project and its bylaws, the acceptance of a deed by each unit owner constitutes an acceptance of the terms of the declaration, bylaws, and rules and regulations. *Id.*

 [¶ 13] "Use restrictions are an inherent part of any common interest development and are crucial to the stable, planned environment of any shared ownership arrangement." *Nahrstedt v. Lakeside Village Condo. Ass'n, Inc.*, 8 Cal.4th 361, 33 Cal.Rptr.2d 63, 878 P.2d 1275, 1281 (1994). Notice of restrictions is necessary to bind purchasers. *Breene*, 310 N.W.2d at 734. "Subjecting owners to use restrictions in amended declarations promotes stability within common interest developments." *Villa De Las Palmas Homeowners Ass'n v. Terifaj*, 33 Cal.4th 73, 14 Cal.Rptr.3d 67, 90 P.3d 1223, 1228 (2004). "[S]ubsequently promulgated and recorded use restrictions are entitled to the same judicial deference accorded covenants and restrictions in original declarations, that is, they are presumptively valid, and the burden of proving otherwise rests upon the challenging homeowner." *Id.*, 14 Cal. Rptr.3d 67, 90 P.3d at 1232–33.

 [¶ 14] "Generally, courts will uphold decisions made by the governing board of an owners association as long as they represent good-faith efforts to further the purposes of the common interest development, are consistent with the development's governing documents, and comply with public policy." *Nahrstedt*, 33 Cal. Rptr.2d 63, 878 P.2d at 1282. Actions of a condominiums's board of directors are reviewed under the business-judgment rule. *Buckingham v. Weston Village Homeowners Ass'n*, 1997 ND 237, ¶ 9, 571 N.W.2d 842. "[T]he power of a condominium's governing body to make rules, regulations or amendments to the declaration

or bylaws is limited by a determination of whether the action is unreasonable, arbitrary, capricious, or discriminatory." *Id.* at ¶ 14.

[¶ 15] The reasonableness of a condominium use restriction is "determined *not* by reference to facts that are specific to the objecting homeowner, but by reference to the common interest development as a whole." *Nahrstedt,* 33 Cal. Rptr.2d 63, 878 P.2d at 1290. "[P]rohibiting pets is 'rationally related to health, sanitation and noise concerns legitimately held by residents' of common interest developments." *Villa De Las Palmas Homeowners Ass'n,* 14 Cal.Rptr.3d 67, 90 P.3d at 1234–35.

[¶ 16] Sections 47–04.1–07 and 47–04.1–08, N.D.C.C., contemplate amendment of bylaws, rules and regulations governing condominium owners. An inability to amend declarations, bylaws, rules and regulations, for which Lucas appears to argue, would be inconsistent with the condominium ownership principle of shared ownership and shared responsibility. The trial court's construction of the incorporated bylaws as part of the declaration of covenants and restrictions appropriately recognizes that principle. Furthermore, although *Breene* recognizes that restrictions in a declaration of restrictions may be adopted after such a declaration has been recorded and after condominium units have been conveyed, it also recognizes that restrictions adopted after condominium units have been purchased would not be enforceable against prior purchasers, except by acquiescence. *Breene,* 310 N.W.2d at 734. Here, however, Lucas is not a prior purchaser, as all of the relevant amendments had been adopted and recorded before he purchased his unit.

[¶ 17] Viewing the amendment of the pet restriction under the reasonableness test of the business judgment rule, we conclude the Association appropriately amended its pet restriction.

[¶ 18] Lucas argues he has not violated the pet restriction, because the dog only "visits," "[a] visiting dog is not a 'kept' dog" and "[t]he word 'kept' is an ambiguous and inappropriately used term." The court disagreed, explaining:

Lucas admits that his dog Sugar visits an average of two days a month and that the dog has barked, but he denies that Sugar barks enough to bother anyone or that Lucas is violating the pet restriction. Lucas argues that the word "kept" or "keep" is ambiguous and that a "visiting" dog is not a "kept" dog. Lucas also argues that Sugar is being "kept" and "raised" at the home of his ex-wife and that home is the only home of the dog Sugar and Sugar cannot be "kept" at more then one location. This Court does not agree.

The Association disputes Lucas' contention that Sugar stays an average two days per month, but even if the Court views the evidence in the light most favorable to Lucas, as the Court must do on a motion for summary judgment, the amount of time Sugar stays with Lucas at his condominium is clearly enough for any reasonable person to conclude that Lucas is violating the Association's pet restriction.

. . . .

The Court agrees that the pet restriction itself clarifies that the word "kept" means in this context "to reside with" as set out in the last clause of the ordinance itself. When the dog is there alone or is staying overnight no reasonable mind can dispute that the dog is being kept by Lucas. The fact that the

dog may stay only for short durations or one or two nights does not change this conclusion.

As the court in *Sibbett v. M.C.M. Livestock, Inc.*, 37 N.C.App. 704, 247 S.E.2d 2, 5 (1978) (quoting *Swain v. Tillett*, 269 N.C. 46, 152 S.E.2d 297, 302 (1967)), noted:

The word "keep," as applied to animals, has a peculiar significance. It means "to tend; to feed; to pasture; to board; to maintain; to supply with necessaries of life." To keep implies "the exercise of a substantial number of the incidents of ownership by one who, though not the owner, assumes to act in his stead."

*See also Villa De Las Palmas Homeowners Ass'n*, 33 Cal.4th 73, 14 Cal. Rptr.3d 67, 90 P.3d 1223, where the homeowners' association adopted a rule prohibiting pets: " 'Pets of any kind are forbidden to be kept in the apartment building or on the grounds at any time.' " *Id.*, 14 Cal.Rptr.3d 67, 90 P.3d at 1225. The court upheld the restriction against Paula Terifaj who was aware of the no-pet rule, *id.*, 14 Cal.Rptr.3d 67, 90 P.3d at 1225, did "not make Villa De Las Palmas ... [her] primary residence," *id.*, 14 Cal.Rptr.3d 67, 90 P.3d at 1225, but "periodically or seasonally," *id.*, 14 Cal.Rptr.3d 67, 90 P.3d at 1225, "visited her unit with her dog," *id.*

[¶ 19] Lucas has not shown the pet restriction is invalid. We conclude the pet restriction is reasonable, and "visits" by Lucas' ex-wife's dog violated the pet restriction, for, as the trial court explained, "[w]hen the dog is there alone or is staying overnight no reasonable mind can dispute that the dog is being kept by Lucas."

## IV

[¶ 20] Lucas contends the trial court erred in sua sponte dismissing the following affirmative defenses in his answer to the complaint:

15. Plaintiff's "pet restriction" is unreasonable, arbitrary, capricious, and discriminatory.

16. Plaintiff's selective application and enforcement of the "pet restriction" is unreasonable, arbitrary, capricious, and discriminatory.

17. Plaintiff's selective interpretation of the "pet restriction" and particularly the word "kept" is unreasonable, arbitrary, capricious, and discriminatory.

The trial court explained:

C. *Court's Decision on Matters Not Before the Court.* As part of the Court's decision this Court considered and rejected Lucas's argument that the pet restriction is unreasonable, that it violates the business-judgment rule, and that enforcement of the pet restriction violates the Association's fiduciary duty to unit owners or to Lucas. Lucas raised these issues in his Answer Brief in Resistance to Plaintiff's Motion for Summary Judgment at pp. 10–11. The Association responded to each of these issues in its reply brief.

Because Lucas raised these issues, but failed to provide proper legal and factual support for each of these claims it was proper for the Court to reject these defenses. In his affidavit in Support of Defendant's Answer Brief in Resistance to Plaintiff's Motion for Partial Summary Judgment of March 13, 2003, Lucas makes conclusory statements without providing competent admissible evidence to support his arguments.... Lucas offered no evidence to show the pet restriction was unreasonable or how it violated the business-judgment rule.

The trial court adequately explained its dismissal of the affirmative defenses.

## V

[¶ 21] Lucas contends the trial court erred in dismissing his fourth (for injunctive relief to compel enforcement of restrictive covenants about trucks, motorcycles, boats, campers, cats, dogs, and operating a business in a unit), eighth (for breach of fiduciary duty by suing Lucas), ninth (for misconduct with regard to the pet restriction and suing Lucas, installing different garage doors than Lucas had suggested and in causing a reduction in property values), and eleventh (for abuse of process to punish Lucas) counterclaims.

[¶ 22] As to the fourth counterclaim, the trial court explained that Lucas failed to set forth specific facts showing there is a genuine issue of fact for trial, "[o]ther than conclusory statements that other unit owners are violating the Association's covenants, Lucas has failed to come forward with specific competent evidence to support his allegations," and "Lucas has a plain, adequate, speedy remedy at law which is not dependent on the Association taking any action." On the eighth counterclaim for breach of fiduciary duty, the trial court explained that Lucas failed to present any evidence of bad faith, "failed to show any legally cognizable damages other than the time he has spent in defending this action," and failed to present "competent evidence to support his conclusory allegations" about selective enforcement, "fraud, self-dealing, unconscionability and other misconduct." The trial court explained that the ninth counterclaim "must be dismissed for the same reasons discussed above relating to the counterclaim for the Association's alleged breach of fiduciary duty" in counterclaim eight and as to the garage doors and possibly decreased property value, "Lucas has failed to submit evidence that the Associa-

tion violated the business-judgment rule or that he has suffered actual damages." The trial court dismissed the eleventh counterclaim because "Lucas has failed to come forward with facts or evidence to show that the Association initiated this lawsuit for some improper purpose."

[¶ 23] A party opposing summary judgment must present competent admissible evidence showing there is a genuine issue of material fact for trial; conclusory allegations, speculation or a scintilla of evidence are not enough to preclude summary judgment. *Charles McCauley Partnership, L.L.L.P. v. Tyrone Township*, 2004 ND 214, ¶ 3, 689 N.W.2d 410. We conclude Lucas has not shown that the trial court erred in dismissing the counterclaims.

## VI

[¶ 24] Lucas contends "[t]he trial court erred in its decisions regarding the Federal Fair Housing Act." Lucas asserts, among other thing: (1) "Lucas has not made any request to the Association for an accommodation;" (2) "There is no justiciable controversy regarding the Association and Lucas in regard to the Federal Fair Housing Act and/or the North Dakota Fair Housing Law;" (3) "Lucas has very little knowledge as to the Federal Fair Housing Act;" (4) "Subsequent to Lucas serving his Answer, Lucas made many attempts to remove any issue as to the Federal Fair Housing Act;" and (5) "Lucas has done everything he could possibly do to remove any issue concerning the Federal or North Dakota Fair Housing Law."

[¶ 25] Section 32–23–06, N.D.C.C., provides, in part:

The court may refuse to render or enter a declaratory judgment or decree where

such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

Section 32–23–12, N.D.C.C., provides: "This chapter is remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be construed and administered liberally." "The purpose of declaratory relief under N.D.C.C. Ch. 32–23, is to settle uncertainties about rights, status, and other legal relations in an underlying justiciable controversy." *Midwest Med. Ins. Co. v. Doe,* 1999 ND 17, ¶ 8, 589 N.W.2d 581. "Under the first sentence of N.D.C.C. § 32–23–06, 'the trial court's decision to grant or deny a request for a declaratory judgment is discretionary. The trial court's decision will not be set aside unless the court has abused its discretion.'" *Nodak Mut. Ins. Co. v. Wamsley,* 2004 ND 174, ¶ 7, 687 N.W.2d 226 (quoting *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Prop. & Cas. Co.,* 452 N.W.2d 319, 322 (N.D.1990)).

[¶ 26] The court attempted to get Lucas to commit to a position with regard to a possible right to a housing act accommodation:

It is the intent of the Court to make Lucas commit to a position as part of this litigation. If he does not intend to raise a claim under the Federal Fair Housing Act the intent of the Court is to make it clear that Lucas had his opportunity to raise the issue and chose not to and therefore he will not be allowed to raise the issue in the future whether in this Court or in another forum unless his disability status should significantly change.

Lucas responded with a noncommittal stipulation:

Defendant hereby stipulates, states, and agrees that [ ] he does not assert any claim for relief under the Federal Fair Housing Act in this action or at this time. Defendant cannot stipulate or state that he will not in the future make a claim under the Federal Fair Housing Act. Such a claim will be moot and a non-issue and will not be necessary after Plaintiff's so-called "pet restriction" is declared to be invalid and not legally enforceable.

[¶ 27] In granting the Association's motion for partial summary judgment declaring Lucas is not entitled to a fair housing act accommodation, the trial court explained:

Lucas resists the Association's motion because he insists that there is no justiciable controversy because he is not asserting and has asserted no claim under the Federal or the North Dakota Fair Housing Act. Lucas argues that the requisites for declaratory relief are not present in this action. This Court disagrees.

This Court finds that there is a controversy between the Association and Lucas concerning Lucas's right to an accommodation under the Fair Housing Act. All of the elements for declaratory relief are present. Lucas has failed to show any factual dispute or reason why summary judgment is inappropriate. Lucas through his actions and discovery answers has conceded that he is not entitled to an accommodation under the Fair Housing Act or that he has waived his right to request an accommodation under the Act. This Court concludes that as a matter of law the Association is entitled to declaratory relief including the following terms:

1. Lucas does not have a valid claim for an accommodation under the

Federal Fair Housing Act; or, if he had a valid claim, the claim was voluntarily waived by his failure to make a valid request to the Association for an accommodation.

2. Lucas's affirmative defense to the enforcement of the restrictive covenant, based on the Fair Housing Act, is dismissed.

3. The Association need not honor a future request by Lucas for an accommodation under the Act, unless there is a significant change in Lucas's health (disability status.)[.]

[¶ 28] Lucas asserted a right to a housing act accommodation in his answer and, despite trying to remove it as an issue in this case, he tried to reserve the issue for future decision, by continuing to assert a right to make such a claim in the future. "A party who brings some claims into one court without seeking complete relief and brings some related claims in another court, or who presents some issues in one court proceeding and reserves others to raise them in another court, invites wasteful expense and delay." *K & K Implement, Inc. v. First Nat'l Bank*, 501 N.W.2d 734, 738 (N.D.1993). Under the circumstances, we conclude the trial court did not abuse its discretion by granting declaratory relief.

## VII

[¶ 29] Lucas contends the court erred in assessing sanctions against him and contends there was judicial misconduct.

[¶ 30] Lucas was sanctioned $500 for failure to properly respond to the Association's discovery requests. Under N.D.R.Civ.P. 37, the district court has "broad discretion in imposing sanctions for discovery violations, and we will reverse the trial court's decision only upon a showing of an abuse of discretion." *Towne v. Dinius*, 1997 ND 125, ¶ 14, 565 N.W.2d 762. From our review of the record, we conclude that the trial court did not abuse its discretion.

[¶ 31] Lucas was sanctioned $1,000 for filing a motion for entry of a default judgment on a counterclaim. Under N.D.R.Civ.P. 11, the trial court may impose an appropriate sanction for filing a motion for an improper purpose. The trial court found that in filing his motion for entry of a default judgment, "Lucas was not acting in good faith," he "improperly attempted to have the Court grant relief to which he was clearly not entitled," and "Lucas instead chose to bring a frivolous motion for default judgment for the purpose of harassing and trying to embarrass the Association." From our review of the record, we conclude that the trial court did not abuse its discretion.

[¶ 32] In its order issued April 28, 2003, the trial court granted the Association's motion to amend its complaint to indicate that its nuisance claim was based on Article XIII of its Declaration of Covenants and Restrictions. The trial court gave Lucas ten days within which to file his answer to the amended complaint. The trial court awarded the Association $500 for attorney fees in connection with Lucas' response "for attorney's fees in having to bring its motion to strike and for its time in regard to Lucas's First Amended Answer, Counterclaims, and Demand for Jury Trial." The court explained:

The intention of the Court was for Lucas to respond to the amended portion of the Association's complaint regarding the nuisance claim only. Instead Lucas took the opportunity to

make substantive changes to his Answer and Counterclaims. Lucas argues he was entitled to a "fresh start" in answering the Association's amended complaint. The Court does not agree.

Lucas knew or should have known that he was to respond to the amended portion of the Association's complaint only and that a proper motion and leave of court was required before he would be allowed to completely rewrite his Answer and Counterclaims. Lucas ignored Rule 15 N.D.R.Civ.P. in amending the pleadings in the manner that he did and Lucas ignored prior rulings of the Court that specifically prohibited him from deleting his reference to the Fair Housing Act. If Lucas had any doubt about what he was allowed to do in responding to the Association's amended complaint it would have been a simple matter to ask the Court for clarification. Lucas was expected to answer the amended portion of the Association's complaint. The Court never gave Lucas permission to file amended counterclaims. Because Lucas never obtained leave of Court to amend his answer and counterclaims in the manner that he did the Association's motion to strike defendant's amended answer and counterclaims and demand for jury trial is granted.

The court further explained:

Lucas disregarded prior Court rulings and the Rules of Procedure by filing his Amended Counterclaims without first filing a motion with the Court and obtaining leave of Court. Lucas knew or should have known his actions were improper. Lucas's actions are a continuation of improper behavior in this lawsuit for which he has previously been sanctioned.

We conclude the trial court did not abuse its discretion.

[¶ 33] Lucas contends that there was judicial misconduct. Lucas' entire argument on this issue in his brief is the following paragraph:

According to my count, the Association made thirteen motions and was successful on eleven motions, an eighty-five percent success ratio. Lucas made sixteen motions and was successful on three motions, or a nineteen percent success ratio. The motions granted for the Plaintiff were substantive important motions granting partial summary judgment and dismissal of Lucas' counterclaims, etc. The three motions granted for Lucas were insignificant nonsubstantive motions such as preventing the Association from filing a supplemental brief. After consideration of the court's favorable decisions for the Association on the motions, and considering the three sanctions of Lucas in this case, plus one prior sanction, and in view of the trial court's legal decisions with no support in the law, Lucas' suspicions that the trial judge was biased or prejudiced either against dogs or against Lucas was confirmed, in violation of the North Dakota Code of Judicial Conduct. Lucas made a motion to reconsider and correct egregious errors (App. 296) of the trial court and in a brief in support of the motion Lucas suggested that the trial judge was biased in favor of the Plaintiff for some unknown reason, biased or prejudice[d] against the Defendant, based upon prejudice against dogs, against West Highland White Terriers, or against the Defendant personally and that the trial judge had committed judicial misconduct, and perhaps that the trial judge was biased because the Defendant graduated in the same law class as former judge Maurice Hunke. Trial Judge Anderson indicated that my suggestions on that regard were absurd.

[¶ 34] We have often said that a party waives an issue by not providing supporting argument, and without supportive reasoning or citations to relevant authorities, an argument is without merit. *E.g., Riemers v. Grand Forks Herald,* 2004 ND 192, ¶ 11, 688 N.W.2d 167; *Olander Contracting Co. v. Gail Wachter Invs.,* 2002 ND 65, ¶ 27, 643 N.W.2d 29; *Friedt v. Moseanko,* 484 N.W.2d 861, 863 (N.D.1992); *First Fed. Sav. & Loan Ass'n v. Compass Invs., Inc.,* 342 N.W.2d 214, 219 (N.D.1983). Lucas' argument about judicial misconduct is without merit.

## VIII

[¶ 35] Relying on N.D.R.Civ.P. 11 and N.D.C.C. § 28–26–01, the Association, in its cross-appeal contends that the trial court abused its discretion in denying the Association's motion for attorney fees in defending against Lucas' counterclaims. "A district court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Forster v. West Dakota Veterinary Clinic, Inc.,* 2004 ND 207, ¶ 17, 689 N.W.2d 366. Although it characterized the Association's request as "a close call," the trial court denied the request, explaining:

> Lucas's failure to make a motion to amend his answer and counterclaims and his failure to follow through with discovery on his counterclaims supports the argument that he never articulated a proper factual or legal basis for his

counterclaims. Nevertheless, this Court is not convinced that there was such a complete absence of law or fact such that a reasonable person could not have expected a Court would render judgment in that party's favor. Accordingly, this Court declines to award the Association its costs and attorney fees for having to defend against Lucas's counterclaims.

From our review of the record, we are not persuaded that the trial court abused its discretion in denying the Association's request.

## IX

[¶ 36] The judgment and orders appealed from are affirmed.

[¶ 37] WILLIAM F. HODNY, S.J., WADE L. WEBB, D.J., DALE V. SANDSTROM, and WILLIAM A. NEUMANN, JJ., concur.

[¶ 38] The Honorable WADE L. WEBB, D.J., and WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., and MARING, J., disqualified.